## DECIDED IN THE

# SUPREME COURT OF GEORGIA

### AT THE

### OCTOBER TERM, 1897.

102 597
107 623
102 597
117 180

## STARNES *v.* MUTUAL LOAN & BANKING COMPANY.

1. The act of November 11, 1889, "to fix the venue of justice courts in cities of this State having a population of over fifteen thousand, and to locate the times and places of holding said courts," (which act, on December 20, 1893, was amended by striking from the same the word "fifteen" and inserting in its stead the word "five,") is not unconstitutional as referring to more than one subject-matter.

2. This act is not repugnant to those paragraphs of the constitution providing, respectively, that "there shall be in each militia district one justice of the peace," and that "commissioned notaries public, not to exceed one for each militia district, may be appointed."

3. It was settled by the decision of this court in *Brooks* v. *Mutual Loan & Banking Co.*, 95 *Ga.* 178, which was followed in *Moye* v. *Walker*, 96 *Ga.* 769, that in so far as this act relates to the times and places of holding justices' courts, it is not violative of that paragraph of the constitution requiring uniformity in "the jurisdiction, powers, proceedings and practice of all courts or officers invested with judicial powers (except city courts), of the same grade or class." It is now held that this act is not contrary to the above-mentioned paragraph because it extends the jurisdiction of the justices' courts of militia districts located wholly or partially in cities having more than five thousand inhabitants over the whole of such cities; and also, that it does not conflict with that clause of the constitution which declares that "no special law shall be enacted in any case for which provision has been made by an existing general law."

4. A justice's court may at any term lawfully sit from day to day until it shall have disposed of all cases ready for trial; and where a judgment was rendered on a day subsequent to the regular "court day," the presumption, in the absence of proof to the contrary, will be that the term was legally protracted.

5. Where one party executes and delivers to another several distinct and separate promissory notes, maturing at different times in futuro, each being for a sum less than one hundred dollars, but all together aggregating more than that amount, and in a mortgage given to secure the payment of such notes it is stipulated that if default be made in the payment of any one of them and the default shall continue for thirty days, then all of the notes shall become at once due and payable and the payee may proceed to recover the whole of the money due upon such notes, the latter is not, in case of such default, bound to institute an action in a court having jurisdiction of the whole amount of the debt, but may bring in a justice's court separate suits upon any one or more of the notes, not claiming in any one of these suits an amount in excess of that over which such court has jurisdiction.

6. As the alleged right of the plaintiff below to the relief sought by her equitable petition necessarily depended upon the correctness of her averment therein that the judgments rendered against her in the justice's court were void, and as she showed at the trial no valid, legal reason for setting them aside, the court was right in granting a nonsuit.

Argued June 5, — Decided November 29, 1897.

Equitable petition. Before Judge Lumpkin. Fulton superior court. September term, 1896.

*Robert L. Rodgers*, for plaintiff.

*Simmons & Corrigan*, for defendant.

LUMPKIN, P. J. An equitable petition was filed by Narcissa C. Starnes against the Mutual Loan & Banking Company. Its allegations are numerous, and it contains many prayers for relief, one of which is that certain judgments which had been rendered against her in a justice's court in favor of the defendant be set aside, and that the executions issued thereon be quashed. At the trial she was nonsuited, and in her bill of exceptions complains of various rulings and decisions made by the court below. Her entire case depends upon the question whether the judgments above referred to are valid or void. If valid, she is not entitled to any relief; if void, her case is in many respects meritorious. In view of what has just been said, and of our conclusion that these judgments are good, it is only necessary to state the material facts relating to their rendition and then discuss the grounds upon which the plaintiff's attack upon them is based. The actions resulting in these judgments were brought by the Mutual Loan & Banking Company against Mrs. Starnes in the justice's court for the 1234th

district G. M., the same being located in the city of Atlanta, and at the time they were instituted she was a resident of another militia district located in this city. She was duly served in each case, but made no appearance or defense of any kind. The suits were founded on numerous promissory notes maturing at different times. Some of these notes had been due for more than thirty days when the actions were begun; others of them on their faces had not then matured, but all of them were secured by a mortgage on realty, which, among other things, stipulated that "if default shall be made in the payment of any one of said notes, and such default shall continue for the space of thirty days after such note becomes due, . . then each of said notes above mentioned shall thereby become due and payable, and the said 'The Mutual Loan & Banking Company,' if its board of directors shall so desire, may proceed then or any time thereafter to recover the whole of the money then unpaid and due said company, it being expressly understood that time is of the essence of the contract." Each of these promissory notes was for a sum considerably less than $100, though the total amount due upon all of them far exceeded that sum. In each case, the action was upon more than one of the notes, but the Mutual Loan & Banking Company did not in any one of these suits sue for an amount exceeding one hundred dollars. It appears that all of the judgments were rendered upon a day subsequent to the regular "court day" appointed for the holding of this particular justice's court. There is nothing in the record, however, affirmatively showing that this court was not lawfully in session at the time these judgments were rendered.

1. It is obvious that the justice's court assumed jurisdiction of these cases against Mrs. Starnes by virtue of the act of November 11th, 1889, fixing the *venue* of justices' courts in cities having a population of over fifteen thousand, and designating the times and places of holding such courts (Acts of 1889, p. 116), which act was amended December 20, 1893, by making it applicable to cities having a population of over five thousand (Acts of 1893, p. 55). The plaintiff in error insisted in the superior court, and contends here, that the judgments rendered against her in the justice's court are void, because the

above-mentioned act of 1889 is unconstitutional.   In the first place, it is alleged that this act is not constitutional because it refers to more than one subject-matter.   We do not think this objection to the act is well founded.   Its title relates to the *venue* of and the times and places of holding justices' courts in cities.   These things are so intimately connected with one another as to constitute really a single subject-matter, the purpose of the law being to give these courts jurisdiction not only in and over the militia districts wherein they sit, but also in and over the entire city, and to provide in this connection when and where these courts shall sit for the purpose of disposing of the business coming before them.

2. In the next place, the position was taken that the act of 1889 is repugnant to that provision of the constitution, now embraced in section 5855 of the Civil Code, which declares that "there shall be in each militia district one justice of the peace," and also to that clause of the constitution, now embodied in section 5858 of the Civil Code, which provides that "commissioned notaries public, not to exceed one for each militia district, may be appointed."   We are at a loss to perceive any merit in this contention, there certainly being nothing in the act in question which even hints at providing for any increase in the number of magistrates in any militia district or city.

3. It was further insisted that the act of 1889 is violative of two other constitutional provisions, viz., those embraced in sections 5859 and 5732 of the present Civil Code, one of which requires uniformity in "the jurisdiction, powers, proceedings and practice of all courts or officers invested with judicial powers (except city courts), of the same grade or class, so far as regulated by law," and the other of which declares that "no special law shall be enacted in any case for which provision has been made by an existing general law."   This court, in the case of *Brooks* v. *Mutual Loan & Banking Company*, 95 *Ga.* 178, held that this act, in so far as it relates to the times and places of holding justices' courts, is not in conflict with the above-quoted "uniformity clause" of the constitution; and the ruling in that case was followed in *Moye* v. *Walker*, 96 *Ga.* 769.

We will next inquire, is the act contrary to this clause be-

cause it extends the jurisdiction of the justices' courts of those militia districts which are located, either wholly or partially, in cities having a population of more than five thousand inhabitants, over the whole of such cities, so as to authorize a person to be sued in the justice's court of a district other than that of the defendant's residence? This question necessarily suggests another, viz.: does the word "jurisdiction," as here used, relate exclusively to subject-matter? This word is frequently used in the constitution, and invariably means jurisdiction as to subject-matter only, unless an exception arises by reason of its employment in a broader sense in the clause now under construction. For convenience, we will continue the course, already above adopted, of referring to constitutional paragraphs by citing the numbers of the Civil Code sections in which they may be found. Section 5836, in prescribing over what the jurisdiction of the Supreme Court shall be exercised, makes no allusion to persons. Section 5842 confers upon the superior court exclusive jurisdiction in cases of divorce, in criminal cases which are felonies, in cases respecting titles to land, and in equity cases. Section 5844 confers upon superior courts jurisdiction in all civil cases; and section 5845 gives them appellate jurisdiction in all such cases as may be provided by law. The word "jurisdiction," as used in these sections relating to the superior court, surely refers to subject-matter alone; for the only language from which its meaning is to be ascertained consists of words conferring jurisdiction in specified kinds of *cases*. Sections 5852 and 5853 define the "powers" of the court of ordinary; and while the word "jurisdiction" does not occur in them, they do in fact prescribe the subjects over which the jurisdiction of that court shall be exercised, and it is jurisdiction as to things—not persons. Next we have section 5856, which gives to justices of the peace jurisdiction in all civil cases arising ex contractu, and in cases of injuries or damages to personal property, when the principal sum claimed does not exceed one hundred dollars. Section 5858 in effect fixes the jurisdiction of commissioned notaries public by making them ex officio justices of the peace.

The foregoing sections embrace all paragraphs of the con-

stitution which undertake to define or declare what shall be the jurisdiction of the several courts and judicial officers named, and not one of them contains the slightest reference to the subject of jurisdiction over person or territory.

This brings us down to section 5859, which prescribes the rule of uniformity to be observed in the exercise by the several courts and judicial officers of that jurisdiction which has already been conferred, respectively, upon them. In other words, the jurisdiction of each having been definitely fixed, the fundamental law then provides for uniformity, under legal regulation, in its exercise by tribunals of the same grade or class. If the word "jurisdiction," as used in section 5859, requiring uniformity of jurisdiction, means the same as it does in section 5856 conferring jurisdiction on justices of the peace, there is no difficulty in reaching the conclusion that the uniformity referred to relates to jurisdiction as to subject-matter alone, and not to jurisdiction over person or territory. Section 5859 is followed by a number of paragraphs in which the constitution treats separately of the "Attorney-General," "Solicitor-General," "Election of Judges," "Judicial Salaries," "Qualification of Judges," and "Divorce." To this point, the constitution is silent as to *where* suits shall be brought. Then, in sections 5869–5875, this subject is taken up and dealt with exhaustively. In disposing of it reference is had to counties, and none of the provisions descend to militia districts. The general rule is that a person must be sued in the county of his residence. The constitutional guaranty, with stated exceptions, is that no person can be forced out of his county to answer an action, but there is nothing to prevent a defendant from being required to appear in court outside of the militia district in which he resides. The last clause of section 5859 declares that the uniformity therein required "must be established by the General Assembly." This court has several times held that the act of July 21, 1879 (Acts of 1878–9, p. 31), to carry into effect the constitutional paragraph (section 5856) defining the jurisdiction of justices of the peace, was also intended as a compliance with the above-quoted requirement, and that it did, as to justices' courts, establish the

uniformity contemplated by the constitution. See *Johnson* v. *Heitman*, 67 *Ga.* 482; *Harbig* v. *Freund & Co.*, 69 *Ga.* 180; *Bozeman* v. *Singer Co.*, 70 *Ga.* 685. This being so, the General Assembly must have considered that the word "jurisdiction," as employed in both sections 5856 and 5859, related only to subject-matter and matters of practice; for the act simply quotes the language of the constitution prescribing the kinds of cases over which the justices shall have jurisdiction, provides for continuances, and confers authority to hold courts of inquiry. It says nothing whatever as to the persons or territory which shall be subject to the jurisdiction of the justices' courts. If the view taken of this act in the above-cited cases, and now adhered to, is not sound, it follows that even to this date the General Assembly has not yet obeyed the constitutional mandate to establish uniformity in the jurisdiction of these courts. In *Thomas* v. *Lawton*, 71 *Ga.* 244, and *Brahe* v. *Boker & Co.*, 75 *Ga.* 881, this court, apparently still regarding the act of 1879 as a substantial compliance with the terms of this mandate, held that this act did not limit the territorial jurisdiction of the justices' courts for certain militia districts in the city of Augusta, or affect the jurisdiction of any one of those courts over parties residing anywhere in the limits of that city. In the first of these two cases, this extended jurisdiction was sustained under an act passed in 1834, giving to the justices of the peace, in the districts referred to, jurisdiction over the whole corporate limits of the city of Augusta, the court holding that this last-mentioned act was not repealed by the act of 1879. The distinct question whether the act of 1834 was abrogated by the present constitution was not in this case raised or considered; but in the *Brahe* case, the court held that "since the constitution of 1877 and the act of 1879 to carry into effect the provisions of the constitution in relation to the uniformity of practice," a justice of the peace in the city of Augusta could not hold court elsewhere than in his own district, "notwithstanding the prior local laws of that city," citing the case of *Johnson* v. *Heitman*, supra, in which it was decided that the act of 1879, passed in pursuance of the constitutional provision requiring uniformity, etc., did repeal

a local act relating to justices' courts in the city of Savannah. It seems, therefore, that the cases in 71 *Ga.* and 75 *Ga.* are not in complete harmony as to the effect of the act of 1879 upon pre-existing local statutes concerning justices' courts; but this is not material to our present purpose, for in both cases the sufficiency of this act for the purpose for which it was designed is recognized, and both apparently proceed upon the idea that the "uniformity clause" of the constitution contains nothing to prevent legislation authorizing justices' courts to entertain suits against persons not residing within the districts in which such courts are held.

Lastly, on this branch of the discussion, it seems clear that the General Assembly must have entertained the same opinion upon the question with which we are now dealing as that herein expressed. The above-mentioned act of 1889 declares that the justices' courts to which it refers shall have jurisdiction, "as fixed by the constitution, in and over said district and in and over said city." The words, "as fixed by the constitution," are very significant. That instrument did not, in section 5859, "fix" anything as to jurisdiction. The "fixing," as to this matter, had been done in the preceding paragraphs; and, as has been shown, they did not refer to the subject of jurisdiction at all, except as relating to subject-matter. We therefore, for the reasons above set forth, have reached the conclusion that the act of 1889 does not conflict with the "uniformity clause" of the constitution.

The next inquiry is, does this act violate the paragraph forbidding special legislation in a case provided for by an existing general law? We think not. Section 4070 of the Civil Code, relating to justices' courts, reads as follows: "Their civil jurisdiction extends over persons resident of their respective districts, and itinerant persons, and to persons of other districts in certain particular cases provided for in this Code." Section 4102, in which the act of 1889, as amended by the act of 1893, is codified, is in these words: "All justice courts and notary public ex officio justice of the peace courts for militia districts embraced in whole or in part within the corporate limits of any of the cities of this State, having by the United

States census a population of over five thousand inhabitants, shall have jurisdiction as fixed by the constitution in and over said district and in and over said city, and shall hold their courts monthly at fixed times and places at some convenient place within said district or city, said time and place to be fixed as now provided by law.    Said justices and notaries public ex officio justices of the peace may hold their courts at the same or at different times or at the same or different places, as they may desire."    Had the first of these sections (which was taken from section 448 of the Code of 1882) and these two acts been codified all together, the result would have been about as follows: The civil jurisdiction of justices of the peace extends—(1) Over persons resident of their respective districts; and, when the district is embraced in whole or in part within the corporate limits of a city having by the United States census a population of over five thousand inhabitants, over all persons residing in the city.  (2) Over itinerant persons.  (3) Over persons of other districts in certain particular cases provided for in this code.

It seems that the act of 1889 is general in its nature.    It deals with the jurisdiction of the justices.    That is what section 4070 deals with.    If that section is general in its nature, the act is none the less so.    It has a uniform operation throughout the State.    It applies to all instances of a prescribed character, and excepts none.    In the absence of express legislation giving a justice of the peace jurisdiction over persons not residing in his district, there would be no authority of law for holding that he could exercise such jurisdiction; but an act providing additional instances for its exercise, if general in its own terms, should not by any means be treated as special legislation.

The law embraced in section 448 of the Code of 1882 (which, as above stated, appears in section 4070 of the Civil Code) did not declare that there should be *no other* persons subject to the justices' jurisdiction except those therein indicated.    It did give civil jurisdiction over persons of other districts in certain particular cases provided for in the code, but it did not declare that the justices should *not* have jurisdiction over any other

non-resident persons.   In other words, the existing "general
law" did not, except as therein indicated, provide for cases of
:suing persons non-resident of the district.   It made no provi-
.sion whatever as to suits against any class or classes of non-resi-
·dents to which its terms did not specifically apply.   Hence our
·conclusion that section 5732 is not applicable to an act which
in general terms extended the scope of the jurisdiction of jus-
tices' courts over a class of non-residents not mentioned or re-
ferred to in the original law, and thus made provision for cases
not hitherto provided for at all.   It is important to notice that
this new provision was embraced in a general, and not in a
.special, statute.   The act of 1889 is general, and not special,
because it deals with all cities of a given population as a class.
The constitution recognizes several territorial jurisdictions, to
wit: the whole State, and whole counties, cities, and militia
districts.   Whatever applies to-all or any one of these territo-
rial jurisdictions as a *class* can not be called special, but should
be treated as general with regard to that class.

4. The foregoing disposes of the plaintiff's contention that
the justice's court judgments against her were void because
rendered under the provisions of an alleged unconstitutional
statute.   But this does not exhaust the grounds of her attack
·upon these judgments.   It was further urged in her behalf
that they were void because not rendered upon a day regularly
·appointed for a sitting of this court.   It does not appear, how-
·ever, that the court had not, after the lapse of its last preced-
ing "court day," been holding over from day to day for the
purpose of ·disposing of its business. .  Under the act of Octo-
ber 8, 1885 (Civil Code, § 4101), a justice's court may con-
tinue a regular session for this purpose;. and, nothing to the
·contrary appearing, it will be presumed that when a judgment
was rendered by one of these courts on a certain day, it was
.at that time lawfully in session.   See, in this connection, *Bal-
lard Transfer Co.* v. *Clark*, 91 *Ga.* 234; *Bostain* v. *Morris*, 93
*Ga.* 224.

5. As will have been observed, all of the promissory notes
·executed by Mrs. Starnes became, by virtue of the stipulation
.in the mortgage given to secure their payment, due and paya-

ble before the dates respectively fixed in the notes themselves for their maturity. Default having been made in the payment of some of them, and the same having continued for more than thirty days, it was the right of the Mutual Loan & Banking Company to proceed at once to collect the whole amount due upon all of the notes. Apparently, this right of the company was not denied by Mrs. Starnes; but she did contend that, the instrument by the terms of which the maturity of the notes was advanced being a single contract, separate actions could not be maintained upon these notes, but that the company should have brought one action upon all of them in a court having jurisdiction of the total amount due, the same being in excess of one hundred dollars. We can not assent to the correctness of this position. Each one of these several promissory notes constituted a separate and distinct chose in action. It could not for a moment be questioned that a separate action was maintainable upon each and every one of them, provided only that any particular note sued upon had become due before the action upon it was brought. The Mutual Loan & Banking Company would not, of course, have been permitted to show by parol evidence that any of these notes had become due at a time prior to that fixed therein for payment; but it was undoubtedly permissible to prove by competent written evidence that the maker had expressly contracted that, upon the happening of a certain contingency, the notes should immediately mature. The mortgage was competent evidence of such a contract, and the fact that it embraced in this regard a stipulation relating to all of the notes did not operate to render a breach of the promise contained in any one of them a separate and distinct cause of action. In obtaining the judgments rendered on these notes, the Mutual Loan & Banking Company was making no effort whatever to set up and establish the lien of the mortgage, and as a matter of course these several judgments constituted only general liens upon the property of Mrs. Starnes. Had the company desired to foreclose the mortgage, it would have been necessary to institute a proper proceeding for this purpose in the superior court, the mortgage covering realty.

6. As stated at the outset, the right of Mrs. Starnes to the relief which she sought by her equitable petition to obtain depended upon the correctness of her averment that the judgments above discussed were void. The record discloses no valid reason for setting them aside; and this being so, the trial judge did not err in granting a nonsuit.

*Judgment affirmed. All the Justices concurring.*