## CHATHAM COUNTY *v.* GAUDRY *et al.*

1. It does not render section 837 of the Penal Code unconstitutional to hold that it contemplates that a committee of citizens of a county, appointed by the grand jury to inspect and examine the offices, papers, books, records, accounts, and vouchers of county officers, and to make a full and complete report of the result of such investigation to the next succeeding grand jury, shall be paid for such services from the treasury of the county; as compensation therefor would be an expense of the superior court.

2. As the intention of the legislature was, that, when necessary, the services of competent citizens should be secured for this purpose, and the appointees are not compelled to serve, and, from the nature of the services required, are not likely to do so without compensation, the statute necessarily implies that the judge of the superior court may provide for the payment of compensation from the county treasury, as part of the contingent expenses of the court.

3. While the grand jury is authorized to make the appointment, the amount of compensation for the services rendered must be determined by the judge of the superior court, and paid, as other contingent expenses of the court, upon his certificate, from the county treasury.

4. Under the statute, a committee of citizens, appointed by the grand jury for the purpose, may make the required inspection and examination during the term of the court at which they were appointed.

5. The "exclusive and original jurisdiction" of the county commissioners of Chatham county, "in examining and auditing the accounts of all officers having the care, management, keeping, collecting, or disbursement of money belonging to the county or appropriated for its use and benefit, and in bringing them to a settlement," does not prevent the grand jury of that county from exercising the power conferred, and discharging the duty imposed, upon grand jurors by the Penal Code, §§ 836, 837.

Argued April 9, — Decided May 14, 1904.

Complaint.    Before Judge Norwood.    City court of Savannah. June 18, 1903.

Citations by counsel, beside those given in the opinions: *Ga. R.* 79/125; 80/489, 672; 81/47; 73/807; 58/384; 112/133, 152; 113/571; 48/349; 55/252; 82/785; 100/346, 365; 109/633; 85/737; 61/71; 76/496; Civil Code, §§ 5892, 5909, 404; Acts 1901, p. 57.

*Robert L. Colding,* for plaintiff in error.
*Osborne & Lawrence,* contra.

Fish, P. J. From the record in this case it appears: That at the June term, 1902, of the superior court of Chatham county, the grand jury appointed Gaudry and Tison, citizens of that county, to examine the offices, books, papers, accounts, etc., of the sheriff, tax-collector, county treasurer, and county commissioners of the county, and to make a full and complete report of the result of such examination to the grand jury at the next succeeding term, agreeing with such citizens to pay them the sum of $300 for such services. The June term, 1902, continued until within a few days of the time for the December term, 1902, to begin, and the appointees made the examination during its existence, and submitted their report both to the grand jury which appointed them and to the grand jury empaneled at the succeeding term. Subsequently they made out a bill for $300 against the county for their services, and the judge of the superior court approved the same and ordered it paid. They presented this bill to the county commissioners of Chatham county for payment, who refused to pay the same; whereupon Gaudry and Tison brought suit, in the city court of Savannah, against the County of Chatham for the amount of the bill. The county demurred to the plaintiffs' petition, the judge of the city court overruled the demurrer, and the county excepted.

1. The grounds of the demurrer which are insisted upon here are those which are stated or indicated in this opinion. The main ground is, that the statute embraced in the Penal Code, § 837, if construed as providing for any payment by the county for the services rendered, is violative of that provision of the constitution which specifies for what purposes a county may levy taxes. Article 7, section 6, paragraph 2, of the constitution limits the taxing powers of counties to the raising of revenues for specified purposes, one of which is "expenses of courts." Unless the claim of the plaintiffs in this suit can be considered as an expense of the

superior court, the contention of the county now under considera-
tion is sound.    We will assume, for the present, that it was the
intention of the legislature that citizens appointed by the grand
jury for the purposes above indicated and discharging the duties
imposed upon them should be compensated for their services.
Assuming this to be true, would such compensation be an ex-
pense of the court?   It seems to us clear that any expense law-
fully incurred for any purpose for which a term of the superior
court is held is necessarily an expense of holding court.    We ap-
prehend also that the court is held for the discharge of every duty
or public service which the legislature has devolved upon it as a
whole or upon any of its component parts.    A grand jury is a
component part, and a very important one, of the superior court,
and the discharge of any duty which the law imposes upon the
grand jury is one of the purposes for which a term of the supe-
rior court is held; for the grand jury has no existence apart from
the court.    The law declares that it shall be the special duty of
the grand jury, "from term to term of the superior court, to in-
spect and examine the offices, papers, books, and records of the
clerks of the superior courts and ordinary, and also the books,
papers, records, accounts, and vouchers of the county treasurer, and
cause any such clerk or county treasurer, who shall have failed or
neglected to do his duty as required by law, to be presented for
non-performance of official duty."    Penal Code, § 836.    Can there
be any doubt that among the purposes for which a term of the
superior court is held is the discharge of these duties by the grand
jury?   We think not.    If, then, any expense is lawfully incurred
in the discharge of these duties, is it not a part of the expenses of
holding the court.    It seems clear to us that it is.

But the authority and duty of the grand jury in reference to
county matters are not confined to the inspection and examina-
tion of the affairs of the offices mentioned in this section, and to
presenting the incumbents of such offices for non-performance of
official duties.    The next section provides:    "The grand jury
may, when they deem it necessary, appoint any one or more of
the citizens of the county, to inspect and examine, during vaca-
tion, the offices, papers, books, records, accounts, and vouchers of
the court of ordinary for county purposes, clerk of the superior
court, county treasurer, tax-collector, tax-receiver, county school

commissioner, sheriff, and all other county officers; . . and to make a full and complete report of the finances, disbursements, and conditions of the several offices to the grand jury at the succeeding term of the superior court." Clearly, under this section, it is the duty of the grand jury, at least when they deem it necessary, to inspect and examine the affairs of all these county offices for the benefit and protection of the public; and it is equally clear that this is one of the purposes for which a term of the superior court is held. But if the grand jury, in the discharge of this duty of inspection and examination, deem it necessary that the inspection and examination should be made, in vacation, by a committee of citizens of the county, they may appoint such committee for such purpose. If it is necessary for the affairs of these county officers to be examined and reported on by such a committee which originates in one term of the court and terminates in another, is not this one of the purposes for which the terms of the court are held? If any expense is lawfully incurred in having the inspection and examination thus made, is it not a part of the contingent expenses of holding the court? It seems to us that both these questions must be answered in the affirmative. Again, when all the provisions of the law upon the subject are considered, we think it is clear that the members of such a committee, while performing the duties for which they have been appointed, are officers of the court, and being officers appointed only upon the happening of a contingency which renders their appointment necessary, the expense involved in their service is a contingent expense. That the members of such a committee act under the authority and are officers of the court is evident from the provisions of the law in reference to their duties, the powers with which they are clothed for the purpose of effectually discharging them, and the power of the court which the law provides shall, if necessary, be exercised in order that they may so discharge them. The section authorizing the appointment of such a committee provides that "if any of said officers be the custodians of county funds by virtue of their office, or have in their possession funds belonging to the county, they shall exhibit them to said committee, and it shall be the duty of the committee to count the same, and to make a full and complete report of the finances, disbursements, and conditions of the several offices to

the grand jury at the succeeding term of the superior court; and should any of said officers fail or refuse to exhibit to the committee the funds on hand or claimed by them to be on hand, upon notice of that fact to the judge of the superior court by the committee it- shall be his duty to compel the delivery of the funds to the committee for the purpose of counting the same, by mandamus or attachment." The next section provides: "The person or persons so appointed to inspect and examine, shall have power to take full control of the offices, papers, books, records, accounts, and vouchers of the several different offices, to compel the attendance of witnesses, hear evidence in regard to fraud, and the non-performance of official duty, and the improper disbursement of the county funds." Section 839 provides: "If any of such officers refuses to produce the papers, books, records, accounts, and vouchers, it shall be the duty of the judge of the superior court of the county, upon evidence being adduced, to enforce the provisions of this and the two sections that precede it, by mandamus or attachment, as the case may require." These provisions, taken in connection with the manner of the appointment of the members of the investigating committee, the purpose for which they are appointed, and the fact that they must make their report to the grand jury which succeeds the one which appoints them, show the persons appointed as such committee are officers of the court. Why should the mandatory and punitive powers of the court be exercised for the purpose of assisting them in the discharge of their duties, if they are not, while engaged in discharging them, officers of the court? That they are, for the time being, public officers is clear; for no mere private citizens could be clothed with the authority and powers which are conferred upon them. That they are officers of the superior court is equally clear; for, in the language of counsel for the defendants in error, " They can not be classified as any other kind of officers than court officers, because their appointment comes from the court, they work under and with the assistance of the court, and report back to the court. Their origin and end as public officers is in the court; and as they are not permanent officers, as the necessity for their appointment is a contingency upon which their appointment depends, they become contingent officers of the court;" and if there is expense attending their employment, it must be part of the contingent expenses of the court.

2. Another ground of the demurrer is, that " No compensation is provided by law for citizens appointed by a grand jury to examine books of county officers, and such provision must be shown to entitle the petitioners to maintain their said action." The law authorizes their appointment, and, from the nature of the services for which they are appointed, evidently contemplates the appointment of persons peculiarly fitted for the important and responsible duties which they are called upon to discharge; and as the appointees are not compelled to serve, it seems unreasonable to suppose that the law does not contemplate that they shall be paid for their services. We apprehend that one, probably the main, object of the statute is to secure the services of experts for the examination of the books, papers, accounts, and vouchers of county officers, and that this salutary purpose would doubtless be defeated if the court were powerless to provide compensation for the services when rendered. To hold that persons appointed, but not compellable, to perform, for the public benefit, services of such a character are not entitled to compensation for rendering the services would, in our opinion, be equivalent to declaring the law a nullity. We think the law necessarily implies that the court may provide for the payment of reasonable compensation, from the county treasury, to citizens who, under its appointment, perform these services. We have reached this conclusion for the following reasons: (1) the law intends that, when necessary, the services of competent citizens shall be secured for this purpose; (2) as the appointees are not compelled to serve, and the character of the services to be performed are such that they are not likely to be performed without compensation, the law must contemplate compensation, if there is any general provision under which it can be paid; (3) compensation for such services can be paid as part of the contingent expenses of the court. The Civil Code, § 4341, provides: " Any contingent expenses incurred in holding any session of the superior court, including lights, fuel, stationery, rent, publication of the grand jury presentments when ordered published, and similar items, such as taking down testimony in felony cases, etc., shall be paid out of the county treasury . . , upon the certificate of the judge of the superior court, and without further order." This section clearly provides for the payment of all contingent expenses incurred in holding any session of the su-

perior court; for it declares that *any* such contingent expenses shall be paid and how it shall be paid. It enumerates certain contingent expenses which may be incurred in holding a session of the superior court, but the expression, "any contingent expenses," with which the section begins, and the general clause, "and similar items," following those enumerated, show that the enumeration is not intended to be exhaustive, but is only intended to indicate, in a general way, what are contingent expenses. The items enumerated are not all similar items. Lights and fuel may be similar items, but neither is similar to the publication of the grand jury presentments, nor to the taking down of testimony in felony cases. Hence if we consider the expression, "and similar items," to be restrictive, the restriction can not exclude any item of contingent expense which is similar to any one of those mentioned in this section; for it is clear that an item similar to either of those mentioned is included in the general and indefinite clause, "and similar items." Certainly there is as much similarity between expense incurred in investigating and reporting to the grand jury the condition of the various offices involving the fiscal affairs of the county, and the expense incurred in publishing the grand jury presentments, as there is between the latter and the expense for lights and fuel. An investigation instituted by one grand jury, the result of which is to be reported to another grand jury and to become a part of the presentments of the latter, may well, as an item of contingent expenses, be deemed similar to the publication of the grand jury presentments. Both the investigation and the publication originate with the grand jury, they both concern the work of the grand jury, and the expenses for either are grand jury expenses. The decisions of this court to the effect that " before an officer can be required to pay out public money, or be justified in doing so, those who demand its payment should be able to show a clear provision of the law which entitles them to receive it," are not in conflict with the conclusion which we have reached in this case. There is a clear provision of law for the payment of the contingent expenses of any term of the superior court, and, as we have seen, the claim of the plaintiffs was a contingent expense of the superior court of Chatham county.

3. The contention of counsel for the plaintiff in error that the grand jury is authorized to appoint, but not to employ, the mem-

ber or members of the committee of investigation may be granted, without affecting the question as to whether the members of such committee can be lawfully paid for their services from the county treasury; for if, as we hold, the compensation of such persons is a part of the contingent expenses of the court, it is the judge of the court who must determine what amount shall be paid for the services rendered. He must approve the bill and order it paid, as the judge did in the present instance, before it can be paid, and any action by the grand jury in reference thereto amounts simply to a recommendation on their part as to the amount of compensation to be allowed.

4. While there is some force in the contention that the law only authorizes the appointment of an investigating committee to serve during the vacation of the court, we do not think, when the purpose which the statute had in view is considered, the fact that a committee appointed may make the investigation during a prolonged term of the court at which the committee was appointed renders the appointment of the committee invalid, or deprives its members of the right to compensation. The purpose of the statute evidently is to have the investigation and examination made by competent citizens of the county, other than the grand jurors, whenever it is impracticable for the grand jury, through a committee of its own members, to make a satisfactory inspection and examination during the term of their service as grand jurors; and as the law looks to a careful and thorough, and not a superficial and hurried, examination, the provision is made for an examintion in vacation, when, in most counties, there will be much more time for such purpose than there could be in the limited time during which a term of the court is held. But if the wise provision of the law for an examination during vacation is wrested from its manifest purpose, and construed to prevent an examination by a committee of citizens during a prolonged term of the court, the effect would be that the very counties which stand in most need of the benefits which this statute is intended to secure would be prevented from securing them. These are the counties which, owing to their large population, great wealth, large fiscal affairs, the amount of public funds handled by their officers, the great volume of separate items involved in the digests and accounts to be gone over and carefully considered, etc., most often require a careful, painstaking, and com-

plete examination of the conditions of the offices through which their revenues are raised and disbursed. In some such counties the terms of the superior court are held so often, or are so prolonged, that the interval elapsing between the adjournment of one term and the beginning of another is too short to afford time for such an examination to be satisfactorily made during a vacation of the court. The present case well illustrates this fact; for, as stated by counsel for the plaintiff in error, " The petition shows that the services in question were rendered during the June term of the court, and the bill was approved on November 25, 1902, by four members of the grand jury, including the foreman, while said court was still in session and before the grand jury for the June term had been discharged. The report of their labors was submitted to the grand jury for the December term, 1902," and the judge presiding at that term passed an order, dated December 1, 1902, approving the bill and ordering it paid. Here it will be seen that the term at which the committee of experts was appointed was still in session on November 25, and the next term began on December 1. Evidently the vacation of the court, in this instance, could *hardly* have been long enough, in a county so populous, wealthy, and of such large fiscal affairs as Chatham, for the inspection and investigation required to be carefully and thoroughly made. We think the purpose of the words "in vacation" in the statute is simply to allow the examination to be made in vacation, and not to prevent its being made during a term of the court, by a committee of citizens appointed for the purpose by the grand jury.

5. Another contention is, that the county commissioners of Chatham county " have original and exclusive jurisdiction of the auditing of the books of the officers of Chatham county, . . and the grand jury have no authority in this county to encroach upon the powers and duties of the county commissioners." In support of this contention, section five of the act of February 21, 1873 (Acts 1873, p. 235), creating commissioners for that county, is cited. That section of the act provides that the county commissioners " shall have power and authority to exercise exclusive and original jurisdiction" over various subject-matters specified therein, one of which is, " In examining and auditing the accounts of all officers having the care, management, keeping, collecting, or disbursement of money belonging to the county or appropriated for

its use and benefit, and in bringing them to a settlement." This was simply a transfer, so far as Chatham county was concerned, to the county commissioners of the "original and exclusive jurisdiction" in this matter of the ordinary, to whom it had been given, when the old inferior court was abolished by the constitution of 1868. Code of 1868, § 346; Constitution of 1868, art. XI, par. 7; Code of 1873, § 337 (7). The ordinaries of all the counties in this State, except those in which jurisdiction over county matters has been conferred upon county commissioners by a special act, when sitting for county purposes, have the same "original and exclusive jurisdiction" as that conferred upon the county commissioners of Chatham county in the above-quoted language from the special act for that county. Civil Code, § 4238, par. 7. Yet it can hardly be seriously contended that, because this is true, the grand jurors can not exercise the power in reference to the inspection and examination of county offices which is conferred upon them in the code. The fact that the provision in reference to the ordinaries and the provision in reference to the grand juries are found in the same code shows conclusively that the jurisdiction conferred upon the one does not interfere with the powers and duties conferred upon the other. To hold that the provision in reference to the examination by the ordinary is in irreconcilable conflict with the provision in reference to the examination by the grand jury would be equivalent to holding that there was no law at all upon the subject; for no matter whence these provisions respectively came originally, they were simultaneously enacted when the code was adopted, and hence must stand or all fall together. The conflict would have to be clear, unmistakable, and absolutely unavoidable before a court would come to so disastrous a conclusion. Fortunately such is not the case. The law, for wise purposes, has made it the duty of both the ordinary and the grand jury to examine. The ordinary, or county commissioners, as the case may be, has "original and exclusive jurisdiction," when sitting for county purposes, "in examining and auditing the accounts of all officers having the care, management, keeping, collecting, or disbursement of money belonging to the county or appropriated for its use and benefit," for the purpose of "bringing them to a settlement." In order to bring them to a settlement with the county, he may issue execution

against them and their bondsmen. *Jones* v. *Collier*, 65 *Ga.* 553; *Arthur* v. *Commissioners of Gordon County*, 67 *Ga.* 220. But the grand jury has the power, and it is its duty, to inspect and examine the various county offices mentioned in the Penal Code, §§ 837, 838, including that of the ordinary for county purposes, for the public information and in order that the grand jurors may ascertain whether it is their duty to present any such officers for "non-performance of official duty." The inclusion of "the court of ordinary for county purposes" in the enumeration of the offices which the grand jury shall inspect and examine, we think, indicates that, independently of the jurisdiction of the ordinary or county commissioners, the law intends that the grand jury shall make these investigations of all these county offices for the benefit of the taxpayers and in furtherance of public justice.

The demurrer was properly overruled.

*Judgment affirmed. All the Justices concur, except*

SIMMONS, C. J., dissenting. Before an officer can be required to pay out public money, or be justified in doing so, those who demand its payment should be able to show a clear provision of the law which entitles them to receive it. *Kennedy* v. *Seamans*, 60 *Ga.* 612. Such a clear provision of law can not be shown by analogizing the services rendered the public to a law authorizing payment for other and different services. Where the law authorizes a grand jury to appoint a committee of citizens to investigate the books etc. of the county officers, and makes no provision for the compensation of such committee, the persons so appointed are not entitled to compensation as jurors, nor can they be legally paid under the item of "court expenses." Court expenses include only such items or charges as are necessary for conducting the court, and such others as the legislature may determine are proper to be paid under the words "court expenses," as used in the constitution. *Houston County* v. *Kersh*, 82 *Ga.* 252; *Adair* v. *Ellis*, 83 *Ga.* 464; *Howard* v. *Early County*, 104 *Ga.* 669.