142

FREENEY, treasurer, *v.* GEOGHEGAN *et al.*

No. 9234.   June 13, 1933.

*Miller & Lowrey,* for plaintiffs in error.

*Dasher & Carlisle, Charles H. Garrett,* and *Henry H. West,* contra.

Russell, C. J.   This record concerns a case pending in the superior court of Bibb County, in which the defendant had been indicted for embezzling the funds of his employer, the Union Dry Goods Company.   The evidence before the grand jury must have been sufficient, in the opinion of that body, to warrant a trial by jury in the superior court.   This is shown by the fact that the indictment preferred by the prosecutor was returned as a true bill. From an examination into the facts of the case, preparatory to a trial, the solicitor-general became of the opinion that the aid of expert accountants was necessary to so clearly explain multitudinous entries in bookkeeping as to satisfy a jury beyond a reasonable doubt of the guilt of the accused, though it does not appear from the record that the prosecuting officer, after a prolonged personal investigation, had failed to ascertain the truth as disclosed by the writings to which he wished to direct the attention of experts to be used as witnesses.   However, whatever the reasons, the State's counsel and Geoghegan, one of the defendants in error, approached the judge of the superior court, who, after considering the circumstances of the case, approved the tentative employment of Geoghegan and Norris by the solicitor-general.   After the trial of the case of embezzlement and the conviction of the defendant, the judge approved the bill of Geoghegan and Norris as a necessary expense of court, and it was presented to the treasurer of Bibb County.   The treasurer de-

clined to pay the bill. Thereupon Geoghegan and Norris sued out a petition for mandamus, and upon a hearing the mandamus was made absolute, the court commanding the treasurer to pay the account. The county treasurer filed a bill of exceptions, and the case as now before the court raises only one question. Are the fees or charges of expert accountants, employed in behalf of the State in a criminal case by the solicitor-general, with the approval of the trial judge, such contingent expenses in the holding of any and all sessions of the superior court as are within the meaning of § 4872 of the Civil Code (1910) ?

The precise language of the Code, § 4872, is as follows: "Any contingent expenses incurred in holding any session of the superior court, including lights, fuel, stationery, rent, publication of grand-jury presentments when ordered published, and similar items, such as taking down testimony in cases of felony, etc., shall be paid out of the county treasury of such county, upon the certificate of the judge of the superior court, and without further order." The provision as to contingent expenses appeared as § 3617 of the first Code as follows: "Any contingent expenses incurred in holding any session of the superior court, including the above, and similar items, such as taking down testimony in cases of felony, &c., shall be paid out of the county treasury of each county, upon the certificate of the judge of the superior court, and without further order." The words "including the above" in § 3617 referred to the preceding section, 3616, relating to the contingent expenses of the Supreme Court, which were described as follows: "Any contingent expenses incurred in holding the several sessions of the Supreme Court, for lights, fuel, rent, and stationery, &c., shall be paid to the clerk of said court, out of the State treasury, on the certificate of the judges thereof, as to the necessity and fact of such expenditure." The provisions of § 3617 of the Code of 1863 are repeated in § 3692 of the Code of 1873, and appear also as § 3692 in the Code of 1882. In *Maxwell* v. *Cumming*, 58 *Ga.* 384, this court strongly expressed its views as to the strictness with which the contingent expenses of the superior courts should be considered, and held that the statement that named expenses and similar items "shall be paid out of the county treasury . . upon the certificate of the judge of the superior court, and without further order," did not authorize the issuance of mandamus as a matter of judicial discretion, but for-

bade mandamus unless the expenditure approved by the court was expressly authorized by law. In the case just cited it was held that "The judge of the superior court has no legal authority to appoint a detective or special officer to hunt up and arrest and bring back to the county, whence he escaped, an escaped prisoner, to pass an order, on the approval of the grand jury or otherwise, that the county pay such detective or special officer $250 for his services, and to enforce such order by mandamus to the county commissioners to pay the same out of the county treasury." In the opinion of the court Judge Jackson said: "Presuming that the court had proof of the validity of the claim, the great question is, did the court have legal authority to employ Cumming upon such a venture, and to make the county foot the bill? We think not. We are acquainted with no law of Georgia which authorizes the superior court to appoint and pay a detective, or to employ a special officer to detect an escaped prisoner, to arrest him, to guard him back to the county whence he escaped, and to pay him therefor out of the county treasury, or the pockets of the taxpayers. Such would be a very dangerous power. It might mulct the counties in enormous expenses. Instead of hundreds, as in this case, it might cost thousands of dollars."

In 1889 (Ga. L. 1889, p. 156) the General Assembly amended the code section to which we have referred by providing for the publishing of grand-jury presentments as an expense of the court. But before the passage of that statute, the case of *Houston County* v. *Kersh*, 82 *Ga.* 252 (10 S. E. 199), came before this court. Only $10 was involved. It was for the publication of the grand-jury presentments of Houston County. The account was approved by the judge of the superior court, and ordered to be paid. The county commissioners refused to pay the account. The publisher sued Houston County in a justice's court, and a jury found in favor of the plaintiffs. Houston County presented a petition for certiorari upon the ground that the account was not lawful. The judge declined to sanction the petition, and the case came to this court, which reversed that judgment. Chief Justice Bleckley, delivering the opinion of the court, said: "Waiving further consideration of whether the action was proper, supposing the liability to be one recognized by law, we hold that there is no provision for paying such a claim. In order for it to be paid legally, it would have to

come under the terms in the constitution, 'expenses of court.' Code [1882], § 5190. It is no expense of any court, certainly not in the absence of a statute requiring the presentments to be published. The publication of any or all of the proceedings of the superior court might possibly be provided for by the legislature, as in the case of publication of the decisions of this court; and in that event, it is possible the expense of publishing presentments of the grand jury might be treated as an expense of the court. As the law stands, however, we think it is no expense of a court. To bring it within the purview of any statute now existing, it would have to be classed as 'contingent expenses incurred in holding the several sessions,' or 'any session of the superior court,' as used in sections 3691, 3692 of the Code; or as 'expenses of the county for bailiffs at court, non-resident witnesses in criminal cases, fuel, servant-hire, stationery, and the like,' or 'any other lawful charge against the county,' as used in § 514, paragraphs 5, 9, of the Code. And it can not without undue strain be construed to fall within any of these provisions. Our conclusion is that there is no warrant for paying such a claim. As to custom regulating the law, the constitution, in respect to public taxation and finance, undertook to regulate custom, and to put an end to a great deal that had been customary before the constitution was adopted. Authority for paying out the public money should be found in some law. One claiming to draw money out of the treasury of the county or the State should be able to point to a law that clearly authorizes the expenditure."

In *Kennedy* v. *Seamans,* 60 *Ga.* 612, cited by Chief Justice Bleckley in the *Houston County* case, Chief Justice Warner, speaking for this court, in our opinion stated the true rule applicable to the case at bar. "Before an officer can be required to pay out public money, or be justified in doing so, those who demand its payment should be able to show a clear provision of the law which entitles them to receive it." See also *Brunson* v. *Caskie,* 127 *Ga.* 501 (56 S. E. 621, 9 L. R. A. (N. S.) 1002) in which Beck, J., sententiously said: "The first step in the inquiry as to the power of a court to compel a public officer by mandamus to do an act is to determine whether the act is within his official duty. A county is not liable to suit for any cause of action, unless made so by statute. . . The county revenue is mainly derivable from taxes, supplemented by such incidental funds as are paid into the treasury from the sale,

rent, or hire of county property, licenses, etc. Political Code [1895], §§ 399, 429. The prayer of the application for mandamus is to compel the commissioners to issue a warrant on the treasury. The constitution (Civil Code [1895], § 5892) declares that 'The General Assembly shall not have power to delegate to any county the right to levy a tax for any purpose, except for educational purposes in instructing children in the elementary branches of an English education only; to build and repair the public buildings and bridges; to maintain and support prisoners; to pay jurors and coroners, and for litigation, quarantine, roads, and expenses of courts; to support paupers and pay debts heretofore existing.' This constitutional provision not only inhibits the payment of a demand for which the county is not liable by levying a tax, but only permits by this means the payment of such claims as come within the enumerated cases for which they may levy a tax." This paragraph of the constitution has been construed in *Albany Bottling Co.* v. *Watson,* 103 *Ga.* 503 (30 S. E. 270), where this court held that counties have only such powers as may be prescribed by law, and that one who claims the right to receive money from the treasury of the county must show the law which authorizes the expenditure. Also in *Howard* v. *Early County,* 104 *Ga.* 669 (30 S. E. 880), this court held, after quoting the constitution, that "Inasmuch as the power of the counties to raise funds for public expenses is restricted to these subject-matters, payments of such funds must necessarily be restricted to the same subject-matters and those which legitimately grow out of them."

In *Adair* v. *Ellis,* 83 *Ga.* 464 (10 S. E. 117), Justice Simmons, speaking for the court, said: "Let us adhere to a strict construction of the constitution, at least so far as taxing the people is concerned. No man knows how soon the legislature, city governments, and county governments may be in the hands of non-taxpayers. These restrictions which are now so much complained of will then be a shield to the property-owners of the State, and a barrier against those who desire to put their hands in the public treasury." In that case it was contended by counsel for defendant in error that insolvent costs were "expenses of court" within the meaning of the constitution. In overruling this contention Justice Simmons said: "The section now under consideration was one of the restrictions put upon the legislature to restrain it from authorizing counties to

levy taxes except for the objects enumerated therein. One of these objects, as declared in that paragraph, is 'expenses of courts.' The meaning of these words is not to be enlarged by construction, but they are to receive the usual and common construction placed upon them at the time they were incorporated in the constitution. We are inclined to think that where power to levy taxes is involved, the courts should give it a strict construction. But to give these words their usual and common meaning, we think it was not intended in the use thereof to embrace fees and costs of solicitors-general. . . The expenses of court, as commonly understood by the profession and the people when this paragraph of the constitution was adopted, were the payment of jurors, bailiffs, witnesses in criminal cases, lights, fuel, stationery, etc." It is argued in the case at bar that it will impose a great hardship in some cases upon the solicitor-general to receive assistance of the kind alleged in this case and to have to pay therefor himself, and thus to serve the public without compensation. As to this, Justice Simmons said: "All this may be true, and doubtless is true in many instances; but we do not think that is an argument which should influence us in the construction of a constitutional provision. It is our duty to declare what the law is, and not what it should be. The hardship in any particular case should not influence the court in its construction of the law. That argument should be addressed to the lawmaking power." And so we say in this case, that it is for the legislature to determine, and in its power to declare, that the employment of experts for the purpose of assisting the prosecution of a criminal case, in ascertaining and assimilating the evidence, shall be a contingent expense to be paid upon its approval by the judge of the superior court. It would seem, however, that should that be done, similar expenses in behalf of defendants in criminal cases, who are without funds, should be likewise provided for. Every defendant is presumed to be innocent until his guilt has been shown, and it would be as much the duty of the State to see that an innocent man should not be convicted as that one guilty of crime should be convicted and punished.

The decision in *Chatham County* v. *Gaudry*, 120 *Ga.* 121 (47 S. E. 634), which is stressed and relied upon by the defendant in error, not being the judgment of a full bench, is not controlling. But aside from that fact, we think it is very easily distinguished from

the case at bar. In that case, there was an express provision of law for the performance of a duty by the grand jury as an important part of the court at every session of the superior court—the duty of examining the books and records and financial condition of the county each term of court. The grand jury has that duty solemnly imposed upon it. Penal Code (1910), § 841. If in its judgment the grand jury has not sufficient facilities for this investigation, or sufficient time for the performance of the duty, it is expressly provided by law that this arm of the court may select a committee to make the investigation for it. In the *Gaudry* case the grand jury, in accordance with law, selected a committee, who performed the service required by law and made the report, as provided by law, to the following grand jury. In these circumstances there was no question remaining except for the judge to determine whether the charge for the service rendered in accordance with law was excessive, or fair and correct. The duty, being required by the section just cited, is a contingent expense, likely to arise at any session of court, or even in all sessions. The expense which the solicitor-general incurred in this case can not be said to be such an expense as would occur in all criminal trials, or at any term of the superior court. But even if this were true, it renders the more impressive the language quoted from Judge Jackson in the *Cumming* case, supra. The fact which absolutely differentiates the case at bar from the *Gaudry* case is that in the *Gaudry* case there was express provision for the performance of a duty which, contingent upon circumstances, could occur at any term of the superior court,—a duty which the grand jury was by law required to perform, either individually or by a committee selected by it. In the case at bar it is attempted to compel the county treasurer, by mandamus, to pay from the public funds an altogether new charge,—that of assistance to the solicitor-general in preparing his case for trial, for which there is no legislative authorization. It will be noted further that the order of the lower court does not denominate this as a "contingent expense," in the language of the Code, § 4872, but only as a "necessary court expense." The order directing the treasurer to pay the bill of the defendants in error is as follows: "The above items of expense having been necessarily incurred in the trial of the case of the State *v.* E. Leroy Johnston, in Bibb superior court, it is ordered that the same be paid by the treasurer of Bibb County,

as a court expense." We are of the opinion that the trial judge erred in the judgment making the mandamus absolute. The demurrer should have been sustained, and the petition dismissed.

*Judgment reversed. All the Justices concur.*