24865. McLARTY *et al. v.* FULTON COUNTY.

446

W. D. Thomson, for plaintiffs in error.

Ralph H. Pharr, Charles B. Shelton, contra.

Sutton, J.   The March-April 1933 grand jury of Fulton County, on the last day of that term, under authority of sections 841 and 842 of the Penal Code of 1910 (Code of 1933, §§ 59-310 et seq.), appointed a committee of citizens to investigate the affairs of Fulton County and to make a report of their findings to the May-June grand jury.   On May 17 and June 14 of that year the committee presented bills of expenses incurred in hiring auditors, accountants, stenographers, etc., during the investigation. Judge Virlyn B. Moore, in charge of the grand jury for the May-June term, approved these bills and directed that they be paid out of the treasury of the county.   On January 3, 1934, Judge Moore revoked this order; and the committee presented to him a petition setting up that they had devoted their own services to the investigation for nearly two entire months, and asked for $250 a month each as compensation for their services.   This petition was approved, and an order for payment entered.   Thereupon Fulton County filed its petition to set aside this order, on the ground that it was illegal, in that the law cited above was not applicable to Fulton County, having a city of 85,000 or more people within its borders, and that the real purpose of the committee was to use the compensation awarded them to pay the auditors, accountants, stenographers, etc., expenses incurred by them in making the investigation, which was illegal and for which the county was not liable.   The committee, the members of which were the defendants named in said petition, demurred generally, and filed their answer. The matter was referred to Judge J. H. Hawkins for determination without a jury; and he had for decision, "first, the demurrer of the defendants; and second, the decision as to whether or not the previous order of Judge Moore allowing compensation to the committee should be revoked, set aside, and annuled, this latter question being submitted on the petition and answer without the

introduction of any evidence." Judge Hawkins passed this order: "After a careful consideration of the questions presented, and after much thought and study given to the matter, the writer has been unable to reach any thoroughly satisfactory conclusion as to just what was the intention of the General Assembly, in so far as the modification of section 841 of the Penal Code (1910) is concerned, in the passage of the act of 1905, codified as section 416 of the Civil Code of 1910, or what was the intention of the codifiers of the Code of 1910 in writing into section 841 of the Penal Code the words, 'Except as provided in sections 416, 417, and 418 of the Civil Code, the grand jury may, when they deem it necessary, appoint committees,' etc. If such words be construed literally, then section 841 of the Penal Code is repealed, for provision is made in sections 416, 417, and 418 of the Civil Code for the audit of the books of the various county officers in all of the counties of Georgia; but if this was the intention, it is difficult to understand why section 841 was retained in the Code. If such exception is not to be so construed, then it is apparently without any meaning. It does not seem reasonable to treat it as mere surplusage, and give it no meaning whatever. *Central Ry. Co.* v. *State,* 104 *Ga.* 831 (31 S. E. 531, 42 L. R. A. 518). At any rate, it has long been the rule in this State that before one is entitled to receive payment out of public money, 'those who demand its payment should be able to show a clear provision of the law which entitles them to receive it.' *Newman* v. *State,* 60 *Ga.* 610. This court is of the opinion that no such showing has been made in this case. It is therefore considered, ordered, and adjudged by the court that the demurrer of the defendants to the plaintiffs' petition be and the same is hereby overruled; and that the order heretofore passed allowing compensation to the defendants be set aside, revoked, and annuled." The defendants excepted.

By the act of December 22, 1829, it is provided that it is the duty of the grand juries of this State, from term to term of the superior court, to inspect and examine the offices, papers, and records in the superior and inferior courts of their counties. The acts of Dec. 18, 1820, and Dec. 22, 1823, required clerks of the superior and inferior courts to keep books and records of county funds and to exhibit them to the grand jury. The act of Dec. 26, 1831, declared, that, "as the public money is the property of the

people, they have a right at all times to know how it is expended," and that all county officers into whose hands money belonging to the county or State should come should keep a book and accurate record thereof, and that "it shall be the duty of the county treasurer, or, if none has been appointed, then the clerks of the superior and inferior courts, acting as such, shall at every second term in each county lay before the grand jury a fair abstract from said book." Cobb's Dig. 192 et seq. In Code of 1873, § 3920, it was declared: "In addition to the duties of the grand jury, as indicated in the oath administered to them, and as required by law, it shall be their special duty from term to term of the superior court, to inspect and examine the offices, papers, books, and records of the clerks of the superior courts and ordinary, and also the books, papers, records, accounts and vouchers of the county treasurer, and cause any such clerk or county treasurer who shall have failed or neglected to do his duty as required by law to be presented for non-performance of official duty." The act of 1891 (Ga. L. 1890-91, p. 79) so extended this law as to take in certain other officers and all other county officers. By the act of 1901 (Ga. L. 1901, p. 57) the ordinary or county commissioners were authorized to employ expert accountants to examine such books and records of the county officers named and to make report thereof. By the act 1876 (Ga. L. 1876, pp. 13, 14) ordinaries, county treasurers, clerks of the superior courts, and sheriffs were required to make returns under oath to the grand jury on the first day of each term of the superior court, giving "a just and true statement of the amount of money received by them belonging to the county," etc.; and when such returns were made, the grand jury should examine the same, and either approve or disapprove such returns. Civil Code of 1910, §§ 413, 414, 415. By the act of 1905 (Ga. L. 1905, p. 107) it is provided that in all counties having therein a city of more than 85,000, and which also have a board of commissioners of roads and revenues and a clerk thereof, such clerks shall be ex-officio county auditors thereof, and it shall be their duty, under the direction of the board of commissioners, "to audit the accounts of the county treasurer, tax-collector, and of all other county officers of the county, whose accounts now are, or may hereafter be, required by law to be audited." Civil Code of 1910, §§ 416, 417. Section 418 of that Code, codified from the act of 1901 as amended by the act

of 1905 (supra), provides that in counties other than those mentioned above the ordinaries, or commissioners of roads and revenues in counties having such commissioners, are authorized, whenever they deem it necessary to do so, to employ an expert accountant to examine and report on the books, vouchers, and accounts of any county officer whose duty it is under the law to handle county funds.

The act of 1905 states that so much of sections 840 and 841 of the Penal Code of 1910, and of the act of 1901, as are inconsistent with such act, and all other laws in conflict with it, are repealed. The act of 1905 in reality only made the clerk of the county commissioners, in counties having a city of more than 85,000, ex-officio county auditor, and fixed his duties and compensation. The act of 1901 authorized ordinaries, or commissioners in counties having them, to employ expert accountants to examine the books, etc., of county officers, and the act of 1905 specified who the accountants or auditors should be in certain counties, to wit, the clerk of the county commissioners in counties having a city of more than 85,000 people. The act of 1905 is not in conflict with the Penal Code of 1910, §§ 840, 841, empowering grand juries to make the investigation of county affairs and to appoint committees in certain instances to act for them. Therefore the act of 1905 does not repeal said sections. "Except as provided in sections 416, 417, and 418 of the Civil Code, in addition to the duties of the grand jury as indicated in the oath administered to them, and as required by law, it shall be their special duty from term to term of the superior court to inspect and examine the offices, papers, books and records of the clerks of the superior courts and ordinary, and also the books, papers, records, accounts, and vouchers of the county treasurer, and cause any such clerk or county treasurer, who shall have failed or neglected to do his duty as required by law, to be presented for non-performance of official duty. And in making up their general presentments, they shall take proper notice of the matters brought to their attention by the report and books of the county school commissioners " Penal Code of 1910, § 840. It will be noted that this section is but a codification of the foregoing acts set out in Cobb's Digest at page 195, and in the acts of 1877, p. 116, as referred to above. Section 841 of the 1910 Penal Code, taken from the acts of 1872 (p. 45), of 1890-91 (p. 79), of 1901 (p. 57), and of 1905 (p. 107), referred to above, provides: "Except as provided

in sections 416, 417, and 418 of the Civil Code, the grand jury may, when they deem it necessary, appoint any one or more citizens of the county, to inspect and examine, during vacation, the offices, papers, books, records, accounts, and vouchers of the court of ordinary for county purposes, clerk of the superior court, county treasurer, tax-collector, tax-receiver, county school commissioner, sheriff, and all other county officers; and if any of said officers be the custodians of county funds by virtue of their office, or have in their possession funds belonging to the county, they shall exhibit them to said committee, and it shall be the duty of the committee to count the same, and to make a full and complete report of the finances, disbursements, and conditions of the several offices to the grand jury at the succeeding term of the superior court; and should any of said officers fail or refuse to exhibit to the committee the funds on hand or claimed by them to be on hand, upon notice of that fact to the judge of the superior court by the committee it shall be his duty to compel the delivery of the funds to the committee for the purpose of counting the same, by mandamus or attachment."

We are of the opinion that sections 416, 417, and 418 of the Civil Code of 1910 were not intended to and do not take away from the grand jury its power to investigate, inspect, and examine the books and records of county officers, or, where they deem it necessary, to appoint one or more citizens of the county to do so, as prescribed by sections 840 and 841 of the Penal Code of 1910. All of these sections have been retained in our Code as statutes. They are not necessarily in conflict, but should be harmoniously construed together. While the ordinary and county commissioners are authorized and have the power under the acts of 1901 and 1905, above referred to, to employ an accountant to examine and audit the books and records of the various county officers (and the clerk of the county commissioners is such auditor in counties with a city of more than 85,000 people), this is in addition to the right and power of the grand jury to inspect and examine books and records of the different county officers, or the right of the grand jury to appoint a committee of one or more citizens of the county to make such inspection and examination for that body. The county commissioners being themselves county officers, their accounts and books are subject to inspection, examination, and audit, the same as the

books and offices of other county officials. In fact the law embraces all county officers. In counties having a city of more than 85,000 people, as in Fulton County, it is provided that the clerk of the county commissioners is ex-officio county auditor. The clerks of the county commissioners are appointed and employed by the county commissioners, and are subject to their orders and subservient to them. It will readily be seen that the accounts, books, and records of the county commissioners should not be left exclusively to the examination and inspection of the clerks of such bodies, and the wisdom of having their accounts and records inspected and examined by the grand juries or a committee appointed by that body, when necessary, is just as important, and in some instances perhaps more so, than the inspection and examination by the grand jury of the official accounts and records of other county officers; and to hold that the effect of sections 416, 417, and 418 of the Civil Code of 1910 was to take away this authority of the grand jury in counties having therein a city of more than 85,000, would be to render such counties helpless so far as relates to an audit of the books of the county commissioners, who are in charge of all county affairs, except by the clerks of such bodies themselves as ex-officio county auditors. Public officers are public servants, and public money belongs to the people. This should be kept in mind in determining the intention of the legislature relatively to statutes concerning them. So it is our opinion that under the Penal Code of 1910, § 841, grand juries in counties having a city of more than 85,000 people, when they deem it necessary, may appoint a committee of citizens to inspect and examine, during vacation, the official records, accounts, etc., of all county officers, and to make a full and complete report of their findings to the grand jury at the succeeding term. See *Chatham County* v. *Gaudry, 120 Ga.* 121 (47 S. E. 634), where it. was held that citizens when so appointed are serving the court, and that the judge thereof, and not the jury, must fix and determine the amount of compensation, which is an expense of the court. It is the duty of the grand jury to examine the books and records and financial condition of the county. The grand jury has that duty solemnly imposed upon it by law. Penal Code of 1910, § 841. If in its judgment it has not sufficient facilities for this investigation, or sufficient time to do it, it is expressly provided by law that this arm of the court may select a committee to make the examina-

tion and investigation for it. In the *Chatham County* case the grand jury in accordance with law selected a committee who performed the service required, and made the report to the following grand jury. In these circumstances, there was no question remaining, except for the judge to determine whether the charge of the committee for services was excessive or fair and correct. The duty, being required by the section just cited, is a contingent expense likely to arise at any session of court; even at all sessions. *Freeney* v. *Geoghegan,* 177 *Ga.* 142, 148 (169 S. E. 882). In *Watkins* v. *Tift,* 177 *Ga.* 640 (170 S. E. 918), the *Chatham County* case was followed, and it was further held that "such laws do not confer power upon the grand jury or the court to employ expert accountants, whose compensation is to be paid out of the county treasury, to render services under direction of the committee in performing the duties imposed upon that body." Section 841 of the Penal Code of 1910 is valid, and applies to counties having a city of more than 85,000, except that it does not authorize the appointment of expert accountants by the county commissioners or ordinary, as the case may be, to examine the books and accounts of county officers. In such counties the clerk of the county commissioners is ex-officio auditor, and he is required to make such examination whenever called on by the county commissioners. This change in the existing law, applicable to counties having such a city, did not render section 841 inapplicable to such counties, in that the grand jury could not make an examination of the affairs of county officers and could not confer this duty upon a citizens committee, but merely provided that in such counties the clerk of the county commissioners was ex-officio county auditor. See *Cone* v. *Jones,* 178 *Ga.* 189 (172 S. E. 465), where the decision was planted on the fact that the judge had not approved or disapproved the bill presented for expenses of the committee appointed by the grand jury to examine county affairs. Under that decision and *Freeney* v. *Geoghegan,* supra, the expenses for help for the committee are unlawful. This does not render unlawful compensation for the committee members for services performed by themselves.

It was for the judge to determine whether the amount claimed by the defendants for their services as members of the grand jury committee, lawfully appointed under the sections of the Penal Code, supra, was just, reasonable, and due to them as members of

such committee; and the fact that the members of this committee, to whom this compensation was due, intended to make some use thereof, if the same was paid to them, not allowed or permitted as an expense against the county by the statutes authorizing their appointment does not alter the fact that under the Code and the authorities cited the members of such committee were themselves entitled to such compensation. If after they receive such compensation they cast it aside and receive no direct benefit to themselves therefrom, this is no concern of the county after it discharges its debt to them. The fact that the committee members admitted that they intended to pay for the help they necessarily had to obtain in making the investigation into county affairs imposed upon them under the order of their appointment, for which, under the law, the county was not liable, being only liable for just and reasonable compensation to. the members of the committee for their services, would not justly entitle the county to refuse to pay such just and reasonable compensation as might be due the committee members for their services. It follows that the demurrer to the petition of the county to set aside the judgment awarding them compensation should have been sustained, and that the overruling of that demurrer, and revoking the last order of Judge Moore awarding the defendants compensation for their services, were erroneous.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*