18850.   BIBB COUNTY *et al.* v. HANCOCK.

ARGUED FEBRUARY 14, 1955—DECIDED MARCH 14, 1955.

*Ellsworth Hall, Jr.,* for plaintiffs in error.

*Frank C. Jones, Jones, Sparks, Benton & Cork,* contra.

*M. Cook Barwick, Lamar Sizemore, Charles M. Lokey, Edward E. Dorsey, Hugh M. Dorsey, Francis G. Jones, Jr., W. Colquitt Carter, Edward L. Savell, Ben Weinberg, Jr., Richard D. Carr, A. Walton Nall, C. Baxter Jones, Arthur B. L. Martin, Alex W. Smith, Jr., Wm. H. Schroder, Henry B. Troutman, Jr., Pope B. McIntire, Harry S. Baxter, Roscoe Pickett, Jr., Stanley P. Meyerson, Herbert Johnson, Young H. Fraser, Edwin L. Sterne, Robert R. Richardson,* for parties at interest.

MOBLEY, Justice. 1. In his oral argument counsel for the plaintiff in error discussed two of the grounds of general demurrer,

making the statement that he had put in some ballast to go along with them. While ballast may make smooth the ship's course, it makes the sailing rough for this court, when it comes in the form of such rugged constitutional questions as counsel ably presents in this case. The two grounds orally argued are: (1st) that the act (Ga. L. 1953, Nov.-Dec. Sess., p. 478) is a special law, in that it refers only to those counties having county treasurers, was not advertised as is required for a special law and is therefore invalid; and (2d) that compensation of appointed attorneys is not a purpose for which counties may expend public funds. We will deal with the latter first, as it goes to the very heart of the matter, for, if this is not an expense for which taxes may be levied by a county under the Constitution, then the act is unconstitutional, and only by constitutional amendment could the purpose expressed in the legislative act be accomplished.

The Constitution of Georgia of 1945 by article 7, section 4, paragraph 1 (Code, Ann., § 2-5701) limits the purposes for which counties may levy taxes. One of those is "to pay the expenses of courts," which admittedly is the only classification under which this act may come. The question then is, whether compensation provided by the act for appointed attorneys is an "expense of court," as contemplated by the Constitution. This provision first appeared in the Constitution of 1877, article VII, section VI, paragraph II (1933 Code, § 2-5402). There was no such restriction or limitation upon the power of counties to tax prior thereto. It is clear that, in placing this same provision in the Constitution of 1945, there was no intention to declare any new principle of law, but merely to continue in the new Constitution the same provision of the old, with the same meaning. A construction placed upon the similar provision of the Constitution of 1877 would be controlling as to its meaning in the present Constitution. *Thompson* v. *Talmadge*, 201 *Ga.* 867 (41 S. E. 2d 883); *Griffin* v. *Vandegriff*, 205 *Ga.* 288 (1) (53 S. E. 2d 345). Therefore, a construction by this court of this section of the Constitution of 1877 would be controlling here.

Prior to the adoption of the Constitution of 1877, this court in *Elam* v. *Johnson*, 48 *Ga.* 348, held that appointed counsel was not entitled by any law of this State to be paid for such services out of county funds, stating as follows: "An attorney at law who

was assigned by the Judge of the Superior Court as counsel to defend an indigent defendant, on his trial upon an indictment in the said court, and who accordingly did appear and defend him, is not entitled by any law of this State to be paid for such services out of the county funds." That practice has continued in Georgia throughout the intervening years, and the members of the legal profession have willingly performed this obligation placed upon them, giving their best, spending their own funds, and have with but rare exception furnished the indigent accused adequate representation.

*Elam* v. *Johnson,* supra, held that payment of a fee to appointed counsel could not be made because there was no clear provision of law providing for payment. Likewise, this court has held in numerous other cases that an officer is not required or justified in paying out public funds unless there is a clear provision of law authorizing payment. There was no law providing for payment in the following cases: *Kennedy* v. *Seamans,* 60 *Ga.* 612, 613 (coroners' juries); *Justices Richmond Inferior Court* v. *State,* 24 *Ga.* 82 (food and lodging for jury); *Maxwell* v. *Cumming,* 58 *Ga.* 384 (a detective for locating a prisoner); *Houston County* v. *Kersh & Wynne,* 82 *Ga.* 252 (10 S. E. 199) (publication of presentments of grand juries); *Howard* v. *Early County,* 104 *Ga.* 669 (30 S. E. 880) (publication of annual statement required of county treasurers); *Freeney* v. *Geoghegan,* 177 *Ga.* 142 (169 S. E. 882) (expert accountant employed by solicitor, with approval of superior court judge, to assimilate evidence for use at trial of person accused of embezzlement); *Lumpkin County* v. *Davis,* 185 *Ga.* 393 (195 S. E. 169) (no statutory authority for recovery by sheriff of "turnkey" fees).

The reason given by this court for its ruling in each case was that there was no express statutory authority therefor. There is express statutory authority now under the act in question for payment of attorney's fees for representing indigents accused of capital felonies. In *Freeney* v. *Geoghegan,* 177 *Ga.* 142, supra, this court held that an accountant, employed by the solicitor-general to assist in preparation of an embezzlement case, could not be paid out of the county treasury because there was no statutory authority therefor, and in headnote 2 held: "Court expenses include only such items of charges as are necessary for

conducting the court, and such others as the legislature may determine are proper to be paid under the words 'court expenses,' as used in the Constitution." That headnote may well have been taken by the court from the dissenting opinion of Chief Justice Simmons in *Chatham County* v. *Gaudry,* 120 *Ga.* 121 (47 S. E. 634), where he used the identical words at page 131 thereof. In neither *Freeney* v. *Geoghegan,* 177 *Ga.* 142, supra, nor *Chatham County* v. *Gaudry,* 120 *Ga.* 121, supra, was there express legislative authority for payment of the expenses involved, although in the latter the court held that § 837 of the Penal Code of 1895 (now Code § 59-310), which authorized the grand jury to appoint one or more citizens to examine the offices, papers, books, records, accounts, and vouchers of county officers, contemplated that they should be paid out of the treasury of the county, and that the same was an expense of court within the meaning of the Constitution. So they would not be authority for holding that this court must recognize as an "expense of court" any act of the legislature providing for payment of expenses as an "expense of court" within the meaning of the Constitution. Justice Simmons in *Adair* v. *Ellis,* 83 *Ga.* 464 (10 S. E. 117), which is strongly relied upon by plaintiff in error, at p. 469 made the observation that it might be argued that the legislature has the power to determine and define, under the constitutional provision here being dealt with, what are expenses of court, and that the courts would be bound by its definition. But he said: "This may or may not be true. It is unnecessary for us to determine in this case whether the legislature can enlarge the common and usual meaning of these words or not. It is sufficient for us to say that in this case the legislature did not say that the claims of the defendants in error were expenses of court." The *Adair* case, supra, is distinguished from this case for the same reason the court gave in *Adam* v. *Wright,* 84 *Ga.* 720, 724 (11 S. E. 893), and in *Commissioners of Decatur County* v. *Martin,* 161 *Ga.* 220, 230 (130 S. E. 569). Chief Justice Bleckley, in *Houston County* v. *Kersh & Wynne,* 82 *Ga.* 252, 254, supra, where payment for printing grand jury presentments was sought, and no express legislative authority for such payment existed, stated: "In order for it to be paid legally, it would have to come under the terms in the constitution, 'expenses of courts.' Code, § 5190. It is no

expense of any court, certainly not in the absence of a statute requiring the presentments to be published. The publication of any or all, of the proceedings of the superior court might possibly be provided for by the legislature, as in the case of publication of the decisions of this court; and in that event, it is possible the expense of publishing presentments of the grand jury might be treated as an expense of the court. As the law stands, however, we think it is no expense of a court." This court, so far as we can find, has never held that the legislature may determine and define "expense of courts," but has, in the cases where legislative acts authorized payment of certain expenses, held that the said acts were or were not constitutional, because they were or were not "expenses of the courts" within the meaning of the Constitution. See *Adam* v. *Wright,* 84 *Ga.* 720, supra; *Adam* v. *Cohen,* 84 *Ga.* 725 (11 S. E. 895); *Chatham County* v. *Gaudry,* 120 *Ga.* 121, supra; *Commissioners of Decatur County* v. *Martin,* 161 *Ga.* 220, supra. We must in this case rule upon and determine the constitutionality of the present act.

We think that the act in question is constitutional, and that the legislature acted within its authority in providing payment of a fee and expenses for an attorney representing a defendant charged with a capital felony, who is indigent and unable to employ counsel. Article 1, section 1, paragraph 5 of the Constitution of Georgia (Code, Ann., § 2-105) provides: "Every person charged with an offense against the laws of this State shall have the privilege and benefit of counsel." The Constitution of the United States, amendment VI (Code § 1-806) provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, . . . and to have the assistance of counsel for his defense." The 6th Amendment applies only to one charged with crime in the Federal courts. Gaines *v.* Washington, 277 U. S. 81 (2) (48 Sup. Ct. 468, 72 L. ed. 793); Eilenbecker *v.* Plymouth County, 134 U. S. 31, 34 (10 Sup. Ct. 424, 33 L. ed. 801); *Coleman* v. *State,* 141 *Ga.* 731 (1c) (82 S. E. 228); *Lewis* v. *State Board of Medical Examiners,* 162 *Ga.* 263, 266 (133 S. E. 469). These provisions are in addition to the due-process clause of both State and Federal Constitutions. Denial of counsel has been held to violate the due-process clause of the Federal Constitution. Powell *v.* Ala., 287 U. S. 45 (53 Sup. Ct.

55, 77 L. ed. 158, 84 A. L. R. 527). In *Walker* v. *State*, 194 *Ga.* 727 (1) (22 S. E. 2d 462), this court held: "The provision of the Constitution (art. 1, sec. 1, par. 5; Code § 2-105), that 'Every person charged with an offense against the laws of this State shall have the privilege and benefit of counsel,' guarantees such person who is unable to employ counsel the right to have counsel appointed for him by the court; and such provision entitles an accused who is able to employ counsel a reasonable opportunity to procure counsel of his own selection." In *Martin* v. *State*, 51 *Ga.* 567, decided in 1874, the court said at p. 568: "The constitutional guaranty that 'every person charged with an offense against the law shall have the privilege and benefit of counsel,' should be strictly guarded and preserved. So deeply grafted in our practice has this great right become that none are so low or so poor but that they may rely upon it. If it be so that they are unable to retain counsel, the courts will appoint counsel for them, without charge to the defendant. The same duties and responsibilities rest upon counsel thus appointed as if they received the fullest pecuniary compensation."

While Georgia has no statute requiring the appointment of counsel for an accused unable to employ his own counsel, this court has construed the constitutional provision that every person charged with an offense shall have the privilege and benefit of counsel, to mean that, if said accused is not financially able to employ counsel and desires the court to appoint one to represent him, the court must do so, and failure to do so violates his constitutional right to benefit of counsel. *Elam* v. *Johnson*, 48 *Ga.* 348, supra; *Delk* v. *State*, 99 *Ga.* 667 (26 S. E. 752). The United States Supreme Court, in Betts *v.* Brady, 316 U. S. 455 (5) (62 Sup. Ct. 1252, 86 L. ed. 1595), held: "Decisions of this Court do not lay down a rule that in every case, whatever the circumstances, one charged with crime, who is unable to obtain counsel, must be furnished counsel by the State." The court there reviews the decisions and statutes of most of the States, showing that in many States the courts have not held similar constitutional provisions to mean that the court must appoint counsel in order to satisfy the constitutional requirement that the accused must have benefit of counsel. It is clear that Georgia does, however, and if the Constitution requires the State to furnish counsel to

defend such accused, then it logically follows that compensation may be provided for said services. While the legislative act here did not specifically say that it would be an expense of court, that is not necessary if this court considers it such. See *Adam* v. *Wright*, 84 *Ga.* 720; *Adam* v. *Cohen*, 84 *Ga.* 725; *Chatham County* v. *Gaudry*, 120 *Ga.* 121; *Commissioners of Decatur County* v. *Martin*, 161 *Ga.* 220, all supra; and *Clark* v. *Eve*, 134 *Ga.* 788 (68 S. E. 598). Most of the States have long since provided by statute for compensation for attorneys appointed to represent the indigent accused, some have regularly employed public defenders, and a minority of the courts have even held that, in the absence of express statutory authority, an appointed attorney would be entitled to compensation from the court. For a large collection of these cases see 130 A. L. R. 1439. The case of Webb v. Baird (1854) 6 Ind. 13, raises an interesting question (not involved here) of the constitutionality of a requirement that an attorney furnish his services without compensation. After discussing a constitutional provision of that State, that·"no man's particular services shall be demanded without just compensation," it says: "The legal profession having been thus properly stripped of all its odious distinctions and peculiar emoluments, the public can no longer justly demand of that class of citizens any gratuitous services which would not be demandable of every other class. To the attorney, his profession is his means of livelihood. His legal knowledge is his capital stock. His professional services are no more at the mercy of the public, as to remuneration, than are the goods of the merchant, or the crops of the farmer, or the wares of the mechanic. The law which requires gratuitous services from a particular class, in effect imposes a tax to that extent upon such class—clearly in violation of the fundamental law, which provides for a uniform and equal rate of assessment and taxation upon all the citizens."

Every defendant is presumed to be innocent until his guilt has been shown, and it is as much the duty of the State to see that an innocent man should not be convicted as that one guilty of crime should be convicted and punished. The State furnishes solicitors-general, generally able and experienced to prosecute, assisted by sheriff, deputies, and others skilled in the preparation and presentation of cases. They are officers of the court—paid

for their services, with allowances to cover necessary expenses. Lawyers likewise are officers of the court, with the duty where the court directs to defend the accused unable to employ counsel. Unless provided for, as this act purports to do, the lawyer must not only give his time and use his skill and knowledge, but actually bear the expense of preparation and presentation of his case out of his own pocket. In every capital felony a man's life is at stake. A lawyer's conscience, his respect for his profession, his love for freedom and liberty guaranteed to every American by the Constitution, and for a square deal, will spur him on to see that the poor and defenseless accused shall have his case properly presented and a fair trial, regardless of personal consequences to himself. Payment to him, an officer of the court, of some compensation, which generally would be wholly inadequate as a fee, and reimbursement of expenses incurred, for services, which his State requires of him, would be no gratuity. It would be compensation for services rendered, not a handout from the treasury.

The legislature recognizes it as such and by this act has made it so. As against the attack here made, we hold the act constitutional.

■ Having heretofore held that the legislature, by authorizing payment of certain fees and expenses of appointed attorneys in capital-felony cases, has created an expense of court, which we recognize as an expense of court within the meaning of the provision of the Constitution, article 7, section 4, paragraph 1 (Code, Ann., § 2-5701)—the judges of the superior courts have the inherent power and authority to order it paid out of the county treasury. Code § 24-3005; *Walden* v. *Smith*, 203 *Ga.* 207 (4) (45 S. E. 2d 660).

The provision of section 1 B of the act directing that the court, after the attorney has completed his services, submitted the required affidavit, and after examination and approval of same, "shall enter an order directing the county treasurer, wherein the defendant or defendants were indicted, to pay to such attorney or attorneys such amount for said compensation and expenses as the court orders," is directory. It is clear that it was not the intention of the legislature by such provision to limit payment only to attorneys appointed by the courts in counties where the office of county treasurer still exists. It applies to all superior

courts, to all indigent accused in all capital felony cases, and to all attorneys in the State. Section 1 A provides: "Whenever it shall appear to the *presiding judge of the superior court* that a *defendant or defendants,* indicted for a *capital felony,* is . . . *indigent and unable to pay an attorney* for his or her defense, it shall be the duty of the *court* to appoint *one* or more *attorneys.*" (Italics ours.) Section 3 provides that, where an attorney so appointed receives compensation for his services or expenses subsequent to receiving compensation from the county under this act, he shall reimburse the county either on a pro rata basis or in full for such funds paid him by the county.

This provision directing payment by the county treasurer would not have the effect to limit the operation of the act only to those counties where there is a county treasurer, where to do so would destroy the manifest intention of the legislature that it is to apply in all counties of the State. It is well settled by this court that, where the act is plain, unambiguous, and positive, and plainly and distinctly declares the legislative intention, the act is not open to construction, as it stands self-interpreted. *Floyd County* v. *Salmon,* 151 *Ga.* 313 (106 S. E. 280); *Aldridge* v. *Federal Land Bank of Columbia,* 203 *Ga.* 285, 289 (46 S. E. 2d 578), and cases cited; and "where words have a definite and well-settled meaning at common law, it is to be presumed, unless some good reason to the contrary appears, that this same meaning attaches to them when used in a statute." *Johnson* v. *Bradstreet Co.,* 87 *Ga.* 79, 82 (13 S. E. 250).

Yet Code § 102-102 (9) provides: "In all interpretations, the courts shall look diligently for the intention of the General Assembly, keeping in view, at all times, the old law, the evil, and the remedy. Grammatical errors shall not vitiate, and a transposition of words and clauses may be resorted to when the sentence or clause is without meaning as it stands"; and this court in *Claxton* v. *Johnson County,* 194 *Ga.* 43, 47 (20 S. E. 2d 606), stated: "An exception to the general rule that the use of plain and unequivocal language in a legislative enactment obviates any necessity for judicial construction is presented by the use of words the meaning of which in general acceptation is apparently obvious, and yet the purpose of the legislature would be defeated were the words employed construed literally. *Board*

*of Tax Assessors of Decatur County* v. *Catledge,* 173 *Ga.* 656 (160 S. E. 909) ; *Gazan* v. *Heery,* 183 *Ga.* 30 (187 S. E. 371) ."

Furthermore, the words of a statute are always to be construed in connection with their context, and the intention of the legislature is to be gathered from the statute as a whole so as to give effect to all of its parts, if possible. *Thompson* v. *Talmadge,* 201 *Ga.* 867, supra; *Drake* v. *Drewry,* 109 *Ga.* 399 (35 S. E. 44) ; *Ford Motor Co.* v. *Abercrombie,* 207 *Ga.* 464, 467 (66 S. E. 2d 209) ; *Carroll* v. *Ragsdale,* 192 *Ga.* 118, 121 (15 S. E. 2d 210) ; *Harper* v. *MacNeill,* 192 *Ga.* 123 (15 S. E. 2d 213) ; *Board of Tax Assessors of Decatur County* v. *Catledge,* 173 *Ga.* 656 (2) (160 S. E. 909).

Accordingly, the legislature by this act intended that attorneys provided for should be paid out of county funds by the county treasurer or other person or agency in charge of county funds in those counties where the office of county treasurer has been abolished.

■ The next three objections to the act are discussed together in the briefs of counsel for both parties and will likewise be dealt with here.

First, it is insisted that the act violates the due-process clauses of the State and Federal Constitutions because the act authorizes and directs the entry of the order complained of without notice, hearing, or opportunity to be heard by parties adversely affected, and directs payment by the Treasurer of Bibb County under said conditions. It was stipulated by the parties hereto that Bibb County and its Treasurer might raise any question that a citizen or taxpayer could. The citation in counsel's brief, 12 C. J. 1287, § 1099½, covers the question involved and furnishes the correct answer to the objection raised as to due process. It is: "The constitutional guaranty that no person shall be deprived of his property without due process of law does not apply to the revenues of a county, since a county is a public corporation existing only for public purposes, and its revenues, in the absence of any specific constitutional restriction, are subject to legislative control." See also 16 C. J. S. 1158, § 570, and 12 Am. Jur. 288, § 593. Neither counties nor municipal corporations stand in the same position as individuals or private corporations, and as against the State they do not own the taxes collected by them

and public property held by them as if it were private property. They are not persons as against the State within the meaning of the constitutional provision guaranteeing due process to all persons. *Hammond* v. *Clark*, 136 *Ga.* 313 (71 S. E. 479, 38 L. R. A. (NS) 77; *Ellington Co.* v. *City of Macon*, 177 *Ga.* 541 (170 S. E. 813). There is no case here in behalf of the county or treasurer as private citizens, for it is not shown that their rights would be prejudiced by the enforcement of the act. *Reid* v. *Mayor &c. of Eatonton*, 80 *Ga.* 755, 757 (6 S. E. 602); *Plumb* v. *Christie*, 103 *Ga.* 686 (2) (30 S. E. 759, 42 L. R. A. 181); *Griffin* v. *State*, 183 *Ga.* 775, 777 (190 S. E. 2).

The question of the impairment of contract as between the parties to this action is not raised here, for it is not contended that any contract between Bibb County, the Treasurer, or any citizen of Bibb County is impaired.

The act is not violative of article 6, section 9, paragraph 1 of the Constitution of 1945 (Code, Ann., 2-4401), requiring uniformity in the "jurisdiction, powers, proceedings and practice of all courts or officers invested with judicial powers (except City Courts) of the same grade or class," as this court held in *Starnes* v. *Mutual Loan &c. Co.*, 102 *Ga.* 597, 602 (3) (29 S. E. 452), that "the uniformity referred to relates to jurisdiction as to subject-matter alone and not to jurisdiction over person or territory."

■ It is contended that the act is violative of article 3, section 7, paragraph 8 of the Constitution of 1945 (Code, Ann., § 2-1908), which provides: "No law shall pass which refers to more than one subject matter, or contains matter different from what is expressed in the title thereof," because the caption fails to indicate, forecast, or suggest any provision in the act requiring payment of public county funds, and such provision in the act is different from what is expressed in the title. The caption of the act is as follows: "An act to provide for the appointment of an attorney or attorneys to represent indigent defendants in criminal cases involving capital felonies and appeals from convictions thereof; to provide for payment of compensation and expenses to such attorney or attorneys therefor; to repeal conflicting laws; and for other purposes." Counsel for the plaintiff in error cites *Smith* v. *Bohler*, 72 *Ga.* 546, as apparently deciding the question contrary to his position, but says that it was dictated, in his

opinion by the purpose being served, i.e., education. Headnote 2 of that case states: "Under the title, 'to regulate public instruction in the county of Richmond,' an act of the legislature could grant authority to the board of education to levy a tax for school purposes, and such an act was not unconstitutional, as containing matter different from its title." We are of the opinion that that case is on all fours with this one and would be controlling here. See also *Clark* v. *Black*, 136 *Ga.* 812 (1) (72 S. E. 251). The act is therefore not unconstitutional for the reason here assigned.

*Judgment affirmed. All the Justices concur.*