77665, 77666. TACO BELL CORPORATION v. CALSON
CORPORATION; and vice versa.
(379 SE2d 6)

BIRDSONG, Judge.

This is an appeal and cross-appeal from the order and final judgment of the superior court dismissing appellee's complaint without prejudice.

Appellee Calson Corporation initiated a lawsuit against appellant Taco Bell Corporation seeking recovery of monies allegedly owed under a contract for construction of a restaurant facility by appellee for appellant. Appellant, in its answer, denied liability and asserted a counterclaim for damages, alleging that appellee had breached the construction contract. A jury trial was held, and at the conclusion of appellee's case-in-chief, the appellant moved for a directed verdict. The motion alleged inter alia that appellee, a nonresident contractor, failed to prove its compliance with the registration and bonding provisions of the Nonresident Contractors Act, OCGA § 48-13-30 et seq. before entering upon performance of the construction contract, and that, accordingly, appellee's action was barred thereby. The trial judge ruled upon the appellant's motion, which apparently was still couched as a motion for a directed verdict, and entered a judgment granting the motion and directing dismissal *without prejudice. Held:*

## Case No. 77665

Appellant's enumerations of error are that the trial court erred in dismissing the case without prejudice and in not entering judgment on the merits with prejudice, respectively. Certain of the issues raised by these enumerations are of first impression for our court.

Subsequent to the trial judge's ruling and judgment, a hearing on a motion to amend judgment was held. The trial judge denied the motion to modify, holding that the language of OCGA § 48-13-37 was controlling on its face; that it provided a forum-closing sanction only and did not render the underlying contract void and unenforceable. The trial judge concluded that dismissal of the actions should be

without prejudice. We agree.

At the outset, we find that the purpose of the General Assembly in enacting Ga. Code Ann. § 91A-6107, the predecessor statute to OCGA § 48-13-37, was "[t]o the end that the State of Georgia . . . may receive all *taxes* due in every instance, including contributions due under the employment security law, contractors, who are nonresidents of this state shall register. . . ." (Emphasis supplied.) Ga. L. 1961, p. 480. The Supreme Court has recognized that "the Act is not designed to discriminate *against* non-resident contractors, but to bring them into a parity with resident contractors relative to the compliance with . . . the Georgia Employment Security Law." *Gorrell v. Fowler*, 248 Ga. 801, 803 (286 SE2d 13). Thus, the primary purpose for promulgating the Nonresident Contractors Act was that of revenue collection enhancement, and not for the specific protection of the public at large from allegedly unqualified out-of-state contractors. See Code Ann. § 91A-6102 (now OCGA § 48-13-31); 1960-1961 Op. Atty. Gen., p. 545. In fact, resident contractors are not subject to any similar registration and bonding requirements.

The cases cited by appellant, including *Weston Funding Corp. v. LaFayette Towers*, 550 F2d 710 (2nd Cir. 1977), are distinguishable. Not only do these precedents differ factually from the case sub judice, but most either involve statutes enacted primarily for the protection of the public or involve statutes which impose no significantly different licensing requirements between nonresident and resident business or professional persons as a precondition to doing business in this state, or both.

" 'The cardinal rule in the construction of legislative enactments is to ascertain the true intention of the General Assembly in the passage of the law.' " *George C. Carroll &c. Co. v. Langford Constr. Co.*, 182 Ga. App. 258, 260 (355 SE2d 756), and then give the statute that construction which will effectuate the legislative intent and purpose. *Lively v. Trust*, 184 Ga. App. 361, 362 (361 SE2d 516). In ascertaining legislative intent, "it is also fundamental that all of the words of the statute are to be given due weight and meaning . . . and that the court is not authorized to disregard any of the words of the statute . . . unless the failure to do so would lead to an absurdity manifestly not intended by the legislature." *Boyles v. Steine*, 224 Ga. 392, 395 (162 SE2d 324). We thus will look first to the entire wording of the statute, but " ' "where the language [of the statute] is plain and unequivocal, judicial [interpretation] is not only unnecessary [it] is forbidden." ' " *Dixie Constr. Prods. v. Southeastern Council &c.*, 183 Ga. App. 101, 102 (357 SE2d 831).

Applying these general principles of statutory construction to the statute in question, we find that statutory noncompliance in registering and bond posting does not render the underlying contract null

and void per se. Rather, the penalty for noncompliance imposed by OCGA § 48-13-37 is a forum-closing sanction that closes the courts of Georgia to the offender until such time, if ever, when the offender can substantially comply, within the meaning of OCGA § 1-3-1 (c), with the provisions of the Nonresident Contractors Act. OCGA § 48-13-37; compare with *National Heritage Corp. v. Mount Olive &c. Gardens*, 244 Ga. 240 (260 SE2d 1); *Metric Steel Co. v. BLI Constr. Co.*, 147 Ga. App. 380 (249 SE2d 121) both of which were cited by the Supreme Court in *Gorrell*, supra at 802, as examples of cases involving "similar disabilities relative to non-residents falling in different categories [than resident corporations]."

The effect of a forum-closing statute is to deny subject-matter jurisdiction to the courts until such time, if ever, when the statutory impediment is removed. See, e.g., *Tucker v. Mitchell*, 252 Ga. 545 (314 SE2d 896); *Little v. Walker*, 250 Ga. 854 (301 SE2d 639). The defense of lack of subject-matter jurisdiction does "not go to the merits of the case but go instead to a reason for the abatement of the case." Ga. Prac. & Proc. (5th ed.), Motion Practice § 9-3. See also OCGA § 9-11-12 (b) (1); *Ogden Equip. Co. v. Talmadge Farms*, 232 Ga. 614 (208 SE2d 459); *International Indem. Co. v. Blakey*, 161 Ga. App. 99 (1) (289 SE2d 303). Accordingly, a dismissal entered pursuant to OCGA § 48-13-37 is one of the few involuntary dismissals which does not act as an adjudication on the merits. OCGA § 9-11-41 (b); *Little*, supra at 855; see generally Ga. Prac. & Proc., supra at § 9-3. The motion for directed verdict in the case sub judice, as it pertained to the issue of forum-closing under OCGA § 48-13-37, fell appropriately into that category of motions or pleas labeled as motions in abatement or dilatory pleas. See, e.g., *National Heritage Corp.*, supra at 244; *Metric Steel Co.*, supra at 383; Ga. Prac. & Proc., supra at § 9-3. It is well-established that "there is no magic in nomenclature, and in classifying pleadings we will construe them to serve the . . . pleader, judging the pleading by its function rather than by its name." *Holloway v. Frey*, 130 Ga. App. 224 (3) (202 SE2d 845); Ga. Prac. & Proc., supra at § 9-1. For these reasons, the trial judge did not err in entering an order granting dismissal without prejudice.

Appellant also argues that appellee cannot now meet the requirements of the Nonresident Contractors Act and thus remove the statutory impediment to his use of the courts. Whether appellee could substantially comply with the Nonresident Contractors Act, within the meaning of OCGA § 1-3-1 (c) by late registration, late bond posting and payment of all taxes and revenues due and owing the State is a matter that is not ripe for adjudication. Suffice it to say that if the appellee could not do so, he would continue to be denied access to our courts. However, such impairment, if it does exist, does not alter the effect of OCGA § 48-13-37 as a forum-closing statute.

*Case No. 77666*

In view of our holding in Case No. 77665, we find the issues raised in Case No. 77666 to be moot.

Motion for transfer of case sub judice to the Supreme Court is denied.

*Judgment affirmed in Case No. 77665. Appeal is moot in Case No. 77666. Banke, P. J., and Beasley, J., concur specially.*

BEASLEY, Judge, concurring specially.

I concur fully but note that there should be some mechanism to call this impediment to the attention of the court before the time of the court is wasted in giving attention to the case. The same mid-trial halt occurred in *Gorrell v. Fowler*, 248 Ga. 801 (286 SE2d 13) (1982). In *American Hosp. Supply Corp. v. Starline Mfg. Corp.*, 171 Ga. App. 790, 793 (2) (320 SE2d 857) (1984), the statutory bar was brought to the attention of the court by defendant's motion to dismiss or for summary judgment.

The object of the statute is to deny access to Georgia courts to those foreign contractors who fail to register and pay taxes and who seek judicial relief in recovering payment for performance on their contracts, as stated in the opinion. The object is not fulfilled at all, from the standpoint of the courts, when access is given, a long trial proceeds to near completion, and a judgment is foreclosed by an intervening motion based on the absence of a prerequisite to bringing the suit in the first place.

This waste of judicial resources is further exacerbated by the conclusion we have reached, that dismissal without prejudice is proper, thus allowing plaintiff to posture itself so as to be entitled to access to Georgia courts and another trial.

Not only that, but when the law relies solely on defendants for raising the question, access will in fact be given, even to the point of judgment and execution thereon in favor of the non-complying contractor, until and unless defendants are keen enough to present it.

I am authorized to state that Presiding Judge Banke joins in this special concurrence.

DECIDED FEBRUARY 9, 1989 —
REHEARING DENIED FEBRUARY 27, 1989.

*Rogers & Hardin, John J. Almond*, for appellant.
*Stokes, Shapiro, Fussell & Wedge, J. Ben Shapiro, Jr., Michael*

*P. Davis*, for appellee.