S90A0011. CLOVER CABLE OF OHIO, INC. v. HEYWOOD et al.
S90A0013. BURNUP & SIMS TELCOM, INC. v. CLOVER CABLE
OF OHIO, INC. et al.

(392 SE2d 855)

FLETCHER, Justice.

Clover Cable of Ohio, Inc., a foreign corporation, is asserting contractual, quasi-contractual, tort, and equitable claims against other foreign corporations and a nonresident individual. Plaintiff predicates its claims on the allegation that under an oral agreement, plaintiff acted as a sub-subcontractor on a construction project. The trial court ruled that plaintiff's complaint is subject to dismissal under a forum-barring clause in the Nonresident Contractors Act, Ga. L. 1978, p. 309, § 2 at 738 (codified at OCGA § 48-13-37), in that plaintiff did not comply with the registration and bonding requirements of the Act and granted summary judgment to defendants. OCGA § 48-13-37 provides:

> No contractor who fails to register with the [State Revenue] [C]ommissioner as required by this article or who fails to comply with any provision of this article shall be entitled to maintain an action to recover payment for performance on the contract in the courts of this state.

The primary question for decision is whether a dismissal under OCGA § 48-13-37 is with or without prejudice. In a trilogy of decisions, *Taco Bell Corp. v. Calson Corp.*, 190 Ga. App. 481 (379 SE2d 6) (1989); *Adams v. PPT, Inc.*, 191 Ga. App. 729 (2) (382 SE2d 732) (1989); *Rehco Corp. v. California Pizza Kitchen*, 192 Ga. App. 92 (383 SE2d 643) (1989), the Court of Appeals has held that such a dismissal is without prejudice. For reasons which follow, we agree.

In March of 1986, U. S. Telcom, Inc., a long distance telephone carrier, entered into a contract with Burnup & Sims Telcom, Inc., under which Burnup became U. S. Telcom's general contractor for the construction of a fiber-optic telecommunications line. On March 18, 1986, Burnup in turn entered into a unit-price subcontract with Heywood Associates under which Heywood Associates became the subcontractor responsible for excavation work and the installation of an underground conduit through which the telecommunications line runs. Clover alleges that it entered into an oral joint-venture agreement with Heywood Associates under which Clover and Heywood Associates were to split any net profits under the subcontract. Pursuant to this alleged agreement Clover provided construction equipment, employees, and capital for the subcontracting work.

Clover alleges that, with the knowledge of supervisory personnel of Burnup, Clover's identity as a sub-subcontractor was camouflaged

because of a provision in the Burnup/Heywood subcontract prohibiting the employment of sub-subcontractors, and that Al Rodgers, who is president of Clover, signed the subcontract as vice-president of Heywood so as to note Clover's participation. At the time Clover and Heywood Associates entered into the oral agreement, controversies existed between Clover and John Heywood with regard to the receipt of funds under another joint-venture agreement. Clover contends that John Heywood, never intending to split profits with Clover, fraudulently induced Clover to enter into the present joint venture as a vehicle to procure cash and equipment from Clover in satisfaction of the other monies Clover allegedly owed Heywood.

By letter dated May 13, 1986, Clover sought to inform Burnup that Clover was a partner with Heywood Associates and to request that all payments under the subcontract be jointly payable to Clover and Heywood Associates. One week later Clover provided Burnup with documentary evidence tending to show that Clover had provided capital, equipment, and employees to Heywood Associates for Heywood's performance of its subcontract with Burnup. After Burnup received these letters, John Heywood, at Burnup's request, executed a sworn affidavit stating that Clover was not a party to the Burnup/Heywood subcontract and that there were no unsatisfied mechanic's or materialmen's liens on the project.

In its complaint Clover has sought a recovery against Heywood Associates for breach of contract, or, in the alternative, quantum meruit. Clover has asserted claims against John Heywood for fraud in the inducement of the oral agreement, as well as fraud and misrepresentation in statements made in the sworn affidavit. Clover contends that after it gave Burnup notice of its participation in the subcontract, Clover became entitled to a recovery in quantum meruit against Burnup. Clover also asserts that an equitable lien in Clover's favor was impressed upon contract balances in Burnup's hands, that Burnup became contractually bound to Clover as an obligor of the Heywood/Clover partnership, and that Burnup's refusal to remit contract balances to Clover and Heywood jointly was tortious.

The trial court dismissed the tort and equitable-lien claims asserted by Clover against Burnup, and, based upon the fact that Clover failed to comply with the registration and bonding requirements of the Nonresident Contractors Act, the trial court granted summary judgment in favor of each of the defendants as to all of Clover's other claims. In Case No. S90A0011, Clover appeals, arguing that its claims are neither barred by the Act nor subject to dismissal by the trial court. In Case No. S90A0013, Burnup cross-appeals the trial court's failure to dismiss all of Clover's claims against Burnup, and Burnup argues that portions of an affidavit relied upon by Clover were inadmissible. *Held:*

1. Under the broad language contained in OCGA § 48-13-30, construction of a telecommunications line fits within the definition of contracting activities under the Act. See *Mullis v. Southern Co. Services*, 250 Ga. 90 (4) (296 SE2d 579) (1982).

Furthermore, under what Clover refers to as the undisputed factual allegations in its complaint, Clover is a contractor under the Act and not merely a supplier of equipment. Cf. *American &c. Supply Corp. v. Starline Mfg. Corp.*, 171 Ga. App. 790 (2) (320 SE2d 857) (1984).

2. (a) A nonresident contractor desiring to engage in the business of contracting in this State must register with the State Revenue Commissioner "for each contract when the total contract price or compensation to be received amounts to more than $10,000.00. . . ." OCGA § 48-13-31. The failure of the parties to reduce such a contract to writing does not exempt the contract from these requirements.

(b) Before entering into the performance of the contract, a contractor must execute a bond in an amount equal to 10% of the contract price or compensation to be received, OCGA § 48-13-32 (c) (1); when this is impracticable, a blanket or master bond is to be executed. OCGA § 48-13-32 (c) (2). The Act thus contemplates that a unit-price subcontract will be registered and bonded.

3. Under OCGA § 48-13-37, a party's failure to register a general contract, a subcontract, or a sub-subcontract prohibits the maintenance of an action to recover payment for performance on such contract in the courts of this State. Cf. *Sherman Stubbs &c., Inc. v. American Institute of Marketing Systems*, 117 Ga. App. 829 (1) (162 SE2d 240) (1968). We hold, however, that a dismissal of a complaint under OCGA § 48-13-37 should be without prejudice.

The purpose of the Act is to ensure the collection of taxes accruing to the State and its political subdivisions as a result of the nonresident contractor's contracting activities in Georgia.

Thus, the primary purpose for promulgating the Nonresident Contractors Act was that of revenue collection enhancement, and not for the specific protection of the public at large from allegedly unqualified out-of-state contractors.

*Taco Bell*, 190 Ga. App. at 482. Consequently, the permanent forfeiture of the nonresident contractor's claim against another private party because of the contractor's failure to register and bond the parties' contract is a draconian penalty which the courts incline against. *Rehco*, 192 Ga. App. at 94.

In order to effectuate the purpose of the Act, however, OCGA § 48-13-32 (b) does provide that, "[t]he execution and filing of the bond . . . shall be a condition precedent to commencing work on any con-

tract in this state." For this reason, although the Court of Appeals has held that a dismissal under OCGA § 48-13-37 should be without prejudice, the Court of Appeals has nonetheless questioned whether a substantial compliance with the Act can be accomplished by "late registration, late bond posting and payment of all taxes and revenues due and owing the State." *Taco Bell*, 190 Ga. App. at 483.

Whether a contract can be registered after its performance is an administrative question resolved in OCGA § 48-13-32 (c) (2) (C), which requires the contractor, on or before March 1st in each year, to report and register all contracts of $10,000 or more completed during the previous calendar year. Although this Code section may presuppose registration of the contract prior to its performance as well as afterward, it nonetheless shows that the statutory scheme does contemplate post-performance registration. Therefore, we hold that late registration and payment of all taxes and revenues due the State and its political subdivisions constitute substantial compliance with the requirements of the Act, thus removing the bar to maintenance of an action on the contract. Under these circumstances, as held in the cases *Taco Bell*, supra, exemplifies, the appropriate action for the trial court is to enter an involuntary dismissal without prejudice, OCGA § 9-11-41 (b), rather than to grant a motion for summary judgment which is an adjudication on the merits. *Taco Bell*, 190 Ga. App. at 483.

The trial court thus erred in granting the defendants' motions for summary judgment on this ground. To the extent that *George C. Carroll Constr. Co. v. Langford Constr. Co.*, 182 Ga. App. 258 (355 SE2d 756) (1987) supports the trial court's grant of the defendant's motion for summary judgment because of the plaintiff's failure to register and bond the contract as the Act requires, it is disapproved.

4. Clover's equitable-lien claim against Burnup is unsustainable under the facts of this case. When a party entitled to a statutory lien has been prevented from perfecting such lien by the acts of the adverse party, it has been held that such party is entitled to an "equitable lien for the improvements made" on a quantum meruit theory. *Shubert v. Speir*, 201 Ga. 20, 21 (3) (38 SE2d 835) (1946); *Jones v. Ely*, 95 Ga. App. 4, 5 (4) (96 SE2d 536) (1957). Where, however, as here, the plaintiff's failure to perfect its rights as lienholder is not attributable to the party against whom the lien is sought to be enforced, the plaintiff is not entitled to equitable relief against such party. *P. P. G. Indus. v. Hayes Constr. Co.*, 162 Ga. App. 151 (1) (290 SE2d 347) (1982). Accord *Merritt v. Unkefer*, 223 S2d 723, 724 (Fla. 1969); *Snead Constr. Corp. v. First Fed. &c. Assn.*, 342 S2d 517 (Fla. App. 1977).

5. Citing *Nellis & Co. v. Green & Stallworth*, 36 Ga. App. 684 (2) (137 SE 843) (1927), and *Rooks v. Stanaland*, 33 Ga. App. 8 (1) (124

SE 904) (1924), Clover argues that after its submission of documentary evidence to Burnup, Burnup came under a contractual duty to remit contract balances to Heywood and Clover jointly, notwithstanding the fact that Burnup was under a contractual obligation to remit such monies solely to Heywood. We disagree.

The cases Clover cites presuppose the existence of a contractual relationship between a third party and a partnership. There was no contractual relationship between Clover and Burnup, nor was there any other such relationship giving rise to duties imposed by law independently of a contractual relationship. See generally *Tate v. Aetna Cas. &c. Co.*, 149 Ga. App. 123 (253 SE2d 775) (1979).

6. Similarly without merit is Clover's argument that it has a tort claim against Burnup for conversion and trover. In order to maintain a trover action for the conversion of property, the plaintiff must be the true owner of the property with title thereto. *Miller & Miller v. Wilson*, 98 Ga. 567, 569 (25 SE 578) (1896); *Ocean Steamship Co. v. Southern States Naval Stores Co.*, 145 Ga. 798 (3) (89 SE 838) (1916). By giving Burnup notice of its putative claim against Heywood, Clover did not thereby establish title to, or a proprietary interest in, any res in the hands of Burnup.

7. OCGA § 48-13-37 bars Clover's quantum meruit claims. *Gorrell v. Fowler*, 248 Ga. 801, 802 (2) (286 SE2d 13) (1982).

8. OCGA § 48-13-37 likewise bars Clover's tort claims against John Heywood and Heywood Associates. Clover's attempt to differentiate these claims from its contractual claims is unavailing. In asserting all such claims, Clover seeks "to recover payment for performance on the contract," within the meaning of OCGA § 48-13-37. Consequently, the trial court should have dismissed these claims without prejudice.

9. Under our holdings in this opinion, Burnup was entitled to summary judgment with respect to the claims asserted by Clover against Burnup, thus making Burnup's cross-appeal moot.

*Judgment in Case No. S90A0011 affirmed in part and reversed in part. Appeal in Case No. S90A0013 dismissed as moot. All the Justices concur.*

DECIDED JULY 5, 1990 —
RECONSIDERATION DENIED JULY 26, 1990.

*Hurt, Richardson, Garner, Todd & Cadenhead, M. Michael Egan, Jr.*, for Clover Cable of Ohio, Inc.

*Booth, Wade & Campbell, Brian J. Morrissey, Gary W. Bross, Philip L. Westee, Paxton & Seasongood, Earl Maiman*, for Heywood

and Burnup & Sims Telcom, Inc.