S99G0437. TRANSPORTATION INSURANCE COMPANY et al.
v. EL CHICO RESTAURANTS, INC.
(524 SE2d 486)

HUNSTEIN, Justice.

We granted certiorari from the Court of Appeals' opinion in *El Chico Restaurants v. Transp. Ins. Co.*, 235 Ga. App. 427 (509 SE2d 681) (1998) to consider whether a foreign corporation's action is not

void, and thus subject to amendment, even if the corporation is not authorized to maintain an action in this State because it has not obtained a certificate of authority to transact business here pursuant to OCGA § 14-2-1502 (a). See *El Chico Restaurants*, supra at (2). Based on the language of OCGA § 14-2-1502 (a) and its legislative history, we conclude that a foreign corporation's action is not void for failure to obtain a certificate of authority and thus the Court of Appeals correctly held that El Chico's action could be amended.

OCGA § 14-2-1502 (a) provides that "[a] foreign corporation transacting business in this state without a certificate of authority may not maintain a proceeding in any court in this state until it obtains a certificate of authority." Transportation argues that the phrase "maintain a proceeding" in the statute includes the commencement of that action, so that the failure of a foreign corporation to obtain a certificate of authority prior to the commencement of the action would render it void ab initio. Contrary to Transportation's argument, however, the primary definitions of "maintain" do not include "commencement" of the item to be maintained. Rather, "maintain" most commonly means the continuation of a pre-existing condition[1] and to "maintain an action" most commonly means the continuation of a lawsuit already begun.[2]

Although, as the dissent points out, there are some obscure definitions of "maintain" which include the commencement of the item to be maintained, our rejection of Transportation's definition of the verb is not based solely on the atypical meaning it would ascribe to the statutory language. Instead, we look to the clear legislative history of OCGA § 14-2-1502 (a) to hold that maintaining a proceeding thereunder does not include the commencement of the proceeding to be maintained. That history reveals that in 1969 the Legislature rewrote the law in this area so as to provide that

> No foreign corporation that under this Code is required to obtain a certificate of authority shall be permitted to maintain any action, suit or proceeding in any court of this State *unless before commencement of the action it shall have obtained such a certificate.*

---

[1] For example, the most recent edition of Black's Law Dictionary defines "maintain" as "1. To continue (something). 2. To continue in possession of (property, etc.) . . . ." Id. (7th ed. 1999), p. 965. Standard dictionaries, such as The American Heritage Dictionary, define "maintain" as "1. To keep up or carry on; continue . . . . 2. To keep in an existing state; preserve or retain . . . ." Id. (3rd ed. 1992), p. 1084. See also Webster's Third New International Dictionary (Unabridged, 1967), p. 1362 ("maintain" defined as "1: to keep in a state of repair, efficiency, or validity: preserve from failure or decline . . . .").

[2] Ballentine's Law Dictionary (3rd ed. 1969), p. 764, defines "maintain an action" as "to uphold, continue on foot, and keep from collapse a suit already begun. [Cit.]"

(Emphasis supplied.) Ga. L. 1969, pp. 152, 196. The emphasized language establishes that the Legislature in 1969 did not believe a prohibition against foreign corporations maintaining actions without certificates of authority included the commencement of the action, since the Legislature expressly included the requirement that the certificate be obtained "before commencement of the action" notwithstanding the earlier "maintain" language. Id.

The inclusion of the "commencement" language in the 1969 legislation is important in light of the subsequent enactment of the Georgia Business Corporation Code in 1988. Ga. L. 1988, p. 1070. That enactment, as set forth in the preamble, was intended to "revise and replace the laws relating to business corporations." Id. As part of the revision and replacement, the Legislature chose to remove the 1969 language which had previously required foreign corporations to obtain a certificate of authority "before commencement of the action." Id. at p. 1225; OCGA § 14-2-1502 (a). The rules of statutory interpretation demand that we attach significance to the Legislature's action in removing the emphasized, limiting language. See *Humthlett v. Reeves*, 211 Ga. 210 (2) (85 SE2d 25) (1954) (a legislative body should always be presumed to mean something by the passage of an act). While the Legislature did not *include* the pre-1969 language expressly permitting a cure, as stressed by the dissent, the Legislature did *delete* the language expressly disallowing a cure when the certificate was not obtained prior to commencement of the action. We must presume that the Legislature's failure to include the limiting language was a matter of considered choice. See *Hollowell v. Jove*, 247 Ga. 678, 683 (279 SE2d 430) (1981). Further, under the rules of statutory construction, the omitted language cannot be deemed a redundancy or meaningless surplusage. See *Gilbert v. Richardson*, 264 Ga. 744, 748 (3) (452 SE2d 476) (1994); *State of Ga. v. C. S. B.*, 250 Ga. 261, 263 (297 SE2d 260) (1982).[3]

Our interpretation of OCGA § 14-2-1502 (a) is consistent with

---

[3] The fact that the revision notes to OCGA § 14-2-1502 reflect a failure to recognize the significance in the deletion of the limiting language in the 1969 version of the statute has no impact on our interpretation of the meaning of OCGA § 14-2-1502 (a). Because of the clear legislative history behind OCGA § 14-2-1502 (a), our interpretation cannot be controlled by the construction given to OCGA § 48-13-37, which reflects no comparable change in statutory language. See Ga. L. 1961, p. 480, § 6; Ga. L. 1978, pp. 309, 738, § 2. The latter statute, in fact, specifically provides that "[f]ailure to register *precludes [the] right to sue.*" (Emphasis supplied.) Id. Furthermore, nonresident contractors are expressly required to register "before beginning the performance of any contract" to avoid being denied the right to perform the contract, OCGA § 48-13-34, and OCGA § 48-13-37 merely provides that the failure to so register precludes the nonresident contractor from maintaining an action only where such action is initiated "to recover payment for performance on [such] contract." Accord *Clover Cable v. Heywood*, 260 Ga. 341 (3) (392 SE2d 855) (1990). The situation addressed in OCGA § 48-13-37 is thus distinguishable from OCGA § 14-2-1502.

the statutory language and the legislative history. Further, this interpretation, which recognizes that an uncertified foreign corporation may initiate the action but not continue it without obtaining a certificate of authority, allows an aggrieved party the opportunity to preserve its cause of action but not to reduce it to judgment until the certification process is followed, thereby avoiding the statute of limitation problems arising from the construction proposed by Transportation and the dissent which would deprive aggrieved parties of access to the courts of this State for administrative reasons unrelated to the validity of the asserted causes of action.[4]

Therefore, we affirm the Court of Appeals' holding that the suit filed by El Chico was not void at its inception and thus was subject to amendment.

*Judgment affirmed. All the Justices concur, except Fletcher, P. J., Sears and Hines, JJ., who dissent.*

FLETCHER, Presiding Justice, dissenting.

I dissent because the majority's interpretation conflicts with the statutory language and with this Court's interpretation of an identically-worded statute and is not justified by the policy of saving suits from the bar of the statute of limitations.

The statutory language and legislative history of OCGA § 14-2-1502 (a) are not crystal clear. OCGA § 14-2-1502 (a) provides that "[a] foreign corporation transacting business in this state without a certificate of authority may not maintain a proceeding in any court in this state until it obtains a certificate of authority." On its face, this language may be read to provide that a certificate of authority is required before filing an action because the word "until" signifies a condition precedent[5] and "maintains" signifies at least the commencement of an action, if not the prosecution to final judgment.[6]

Additionally, the legislative history shows that the intention of the legislature was to carry forward the prior law, which held that suits by foreign corporations without a certificate of authority were void and subject to dismissal without prejudice. Prior to 1969, a corporation was permitted to obtain a certificate of authority after initi-

---

[4] We note that our interpretation is also consistent with the position taken by the majority of states which have addressed the issue. See 23 ALR5th 744, Application of Statute Denying Access to Courts or Invalidating Contracts Where Corporation Fails to Comply with Regulatory Statute as Affected by Compliance after Commencement of Action.

[5] BLACK'S LAW DICTIONARY 1380 (5th ed. 1979) ("word of limitation, used ordinarily to restrict that which precedes to what immediately follows it").

[6] *Bell Aircraft Corp. v. Anderson*, 73 Ga. App. 633, 635 (38 SE2d 66) (1946); see also BLACK'S LAW DICTIONARY 859 (5th ed. 1979) (to maintain an action is to commence or to institute, or if in existence, to continue or preserve).

ating an action.[7] However, the legislature changed the law in 1969 and expressly stated that a corporation could not "maintain any action, suit or proceeding in any court of this State unless before commencement of the action it shall have obtained such a certificate."[8] This provision was interpreted to mean that a foreign corporation could not sue a Georgia defendant if it had not obtained a certificate of authority.[9] The majority relies upon a slight modification of this section in 1988. However, the comment to the 1988 revision notes the legislature's intention that the previous bar to suits by unqualified corporations was being carried forward.[10] Significantly, the 1988 revision continued to omit the pre-1969 language that unambiguously permitted a cure after filing of an action.

Any ambiguity in the language and history of subsection (a), however, is resolved by reviewing the remainder of OCGA § 14-2-1502 and a similar statute, OCGA § 48-13-37, which contains identical language. The majority's interpretation of OCGA § 14-2-1502 (a) renders a portion of subsection (b) meaningless. OCGA § 14-2-1502 (b) imposes a civil penalty on a foreign corporation that transacts business without a certificate of authority. This civil penalty "shall be in addition to other consequences set out in this Code section . . . ." Thus, the legislature clearly intended that there be an additional consequence for a failure to comply with the laws of this state. The inability to begin an action in the courts of this state is the only other consequence set forth in OCGA § 14-2-1502. The majority's reading of the statute, however, excises this legislatively-created consequence from the statute.[11]

Additionally, subsection (c) specifically prevents a foreign corporation that has not obtained a certificate of authority from avoiding the consequences of this section by providing that a successor corporation or assignee of a cause of action must obtain a certificate of authority before commencing a suit on that cause of action. There would be no need for this provision if the foreign corporation were able to comply with the certificate of authority requirement anytime after commencing its action.

Finally, the appellate courts' interpretation of a similar statute,

---

[7] 1968 Ga. Laws 565, 790.

[8] 1969 Ga. Laws 152, 196.

[9] *A.B.R. Metals & Servs., Inc. v. Roach-Russell, Inc.*, 135 Ga. App. 193 (217 SE2d 447) (1975).

[10] OCGA § 14-2-1502, comment.

[11] *State v. C.S.B.*, 250 Ga. 261, 263 (297 SE2d 260) (1982) (courts must construe statutory language so as not to render it meaningless or mere surplusage). See also *Houston v. Lowes of Savannah, Inc.*, 235 Ga. 201, 203 (219 SE2d 115) (1975) (basic rule of construction that a statute should be construed "to make all its parts harmonize and to give a sensible and intelligent effect to each part [, as i]t is not presumed that the legislature intended that any part would be without meaning.").

OCGA § 48-13-37, supports this result. That statute provides that non-resident contractors who fail to register with the revenue commissioner and post bond before commencing work under a contract are not entitled "to maintain an action to recover payment for performance on the contract in the courts of this state."[12] When this defense is pled and proved, the trial court must dismiss the case without prejudice.[13] The majority's interpretation is in conflict with our prior reading of the non-resident contractors act and ignores the maxim that identical language should be given the same interpretation.[14]

The majority's policy reason for its result is that otherwise out-of-state companies who ignore Georgia laws will face the bar of the statute of limitations. The legislature, however, has placed compliance with Georgia laws ahead of protecting causes of actions for foreign corporations. Furthermore, this Court has never interpreted OCGA § 14-2-1502 to bar a foreign corporation's suit when it lacked a certificate of authority at the time the cause of action arose. Rather, to comply with Georgia's laws, a foreign corporation need only obtain a certificate of authority before filing suit. The application process contained in OCGA § 14-2-1503 is not complicated and careful lawyers could easily monitor their client's compliance with this law as well as meet the statute of limitations.

I am authorized to state that Justice Sears and Justice Hines join in this dissent.

DECIDED DECEMBER 2, 1999 —
RECONSIDERATION DENIED DECEMBER 17, 1999.

*Dye, Tucker, Everitt, Wheale & Long, Thomas W. Tucker, Rogers & Hardin, C. B. Rogers, Glover & Blount, Percy J. Blount, Arnall, Golden & Gregory, Karen B. Bragman, Robins, Kaplan, Miller & Ciresi, Thomas J. Gallo, Morris, Manning & Martin, Lewis E. Hassett, Hull, Towill, Norman, Barrett & Salley, Patrick J. Rice,* for appellants.

---

[12] OCGA § 48-13-37.

[13] *Clover Cable v. Heywood,* 260 Ga. 341 (392 SE2d 855) (1990); *Rehco Corp. v. California Pizza Kitchen, Inc.,* 192 Ga. App. 92, 94 (383 SE2d 643) (1989). Compare *DOT v. Moseman,* 260 Ga. 369 (393 SE2d 258) (1990) (compliance with registration and bonding requirements before completion of construction project is sufficient to permit access to courts).

[14] *Bibb County v. Hancock,* 211 Ga. 429, 432 (86 SE2d 511) (1955); *Thompson v. Talmadge,* 201 Ga. 867, 885 (41 SE2d 883) (1947) (courts should accord virtually identical language in successor provisions the same construction given the original language).

*Bell & James, John C. Bell, Jr., James L. Bentley III,* for appellee.